# IN THE COURT OF APPEALS OF IOWA

No. 14-1321
Filed May 6, 2015

IN RE THE MARRIAGE OF BRANDEE BRECHT LINDEMIER
AND DAVID ROY LINDEMIER

Upon the Petition of
BRANDEE BRECHT LINDEMIER n/k/a BRANDEE BRECHT ROQUET,
    Petitioner-Appellant,

And Concerning
DAVID ROY LINDEMIER,
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Keokuk County, Randy S. DeGeest, Judge.

Brandee Roquet (formally Lindemier) challenges the district court's modification order placing the parties' children in the physical care of their father, David Lindemier, as well as imputing income to her for purposes of determining her child support obligation. **AFFIRMED.**

Earl B. Kavanaugh of Harrison & Dietz-Kilen, P.L.C., Des Moines, for appellant.

Crystal L. Usher, Cedar Rapids, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

Brandee Lindemier (now known as Roquet) appeals the district court's modification order placing the parties' children in the physical care of their father, David Lindemier, contending the court erred in finding David could provide their children superior care. She also challenges the court's finding that income should be imputed to her for purposes of determining her child support obligation. Upon our de novo review, we affirm the court's modification.

### I. Background Facts and Proceedings.

Brandee and David have two children who are both now teenagers. The parties' marriage was dissolved in 2009, after the parties entered into a stipulation that was approved by the district court. The dissolution decree awarded the parties joint legal custody, with Brandee having physical care of the children and David having liberal visitation. Both parties have since remarried.

In November 2012, Brandee filed a petition to modify the parties' dissolution decree. She asserted, and David agreed, there had been a material and substantial change in circumstances warranting modification of the decree's provisions concerning custody, visitation, and child support. A guardian ad litem (GAL) was appointed for the children.

Thereafter, the appointed GAL met with numerous persons, including the parties and their children, teachers, counselors, and others. She also reviewed the children's medical records. Prior to trial, the GAL submitted a detailed report to the court, discussing her findings and recommendations. Ultimately, she recommended the children be placed in David's physical care.

Trial on the matter commenced in 2014. There, David, Brandee, and the GAL testified, among others. The GAL again recommended the children be placed with David. Among other reasons, the GAL testified the children's consistent statements that they wanted to live with David weighed heavily in his favor.

Following trial, the district court entered its order modifying the parties' dissolution decree. Though the court found neither party was particularly supportive of the other, the court found David to be more credible than Brandee. It pointed out flaws it found in Brandee's behavior illustrating her failure to put the children's needs first, and it determined David could minister more effectively to the children's needs and well-being. The court adopted the GAL's report and recommendation.

The court also modified the child support provision of the dissolution decree. Though the court did not explicitly state its reasoning, it imputed income to Brandee in the amount of $20,800. Based upon the imputed income, it ordered Brandee to pay David monthly child support of $573.99.

Brandee now appeals.[1] Both parties request appellate attorney fees.

---

[1] Aaugh! In over fifty opinions filed in the last six years we have noted an all too frequent appellate rules infraction: failure to place a witness's name at the top of each appendix page where the witness's testimony appears. *See* Iowa R. App. P. 6.905(7)(c) ("The name of each witness whose testimony is included in the appendix *shall* be inserted on the top of each appendix page where the witness's testimony appears." (emphasis added)). Wearily, we make the same observation of the parties' appendix in this case. On a positive note, we commend the appellant for her brief's citations to the transcript record. Our appellate rules of procedure allow "condensed" versions of transcripts to be included in the parties' appendix. *See* Iowa R. App. P. 6.905(7)(f). Condensed versions of a transcript contain four pages of transcript on one page. In referencing the record, the rules require a proof brief to cite to a transcript's page and line number. *See* Iowa R. App. P. 6.904(4)(a). Inexplicably, final briefs (the only briefs we see) need only cite to the appendix page where a transcript page appears. *See* Iowa

## II. *Scope and Standards of Review.*

"We review an order modifying a decree for dissolution of marriage de novo." *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). Nevertheless, "[b]ecause the trial court had the opportunity to observe the demeanor of the witnesses, we give weight to its findings, particularly with respect to credibility, but we are not bound by them." *In re Marriage of Murphy*, 592 N.W.2d 681, 683 (Iowa 1999); *see also In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) ("A trial court deciding dissolution cases 'is greatly helped in making a wise decision about the parties by listening to them and watching them in person.' In contrast, appellate courts must rely on the printed record in evaluating the evidence. We are denied the impression created by the demeanor of each and every witness as the testimony is presented." (internal citations omitted)). We afford the district court "considerable latitude" in its determination "and will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005); *see also Sisson*, 843 N.W.2d at 870. We note that prior cases have little precedential value, "as our determination must depend on the facts of the particular case." *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). Our overriding consideration is the best interests of the child. Iowa R. App. P. 6.904(3)(o).

---

R. App. P. 6.904(4)(b). So, when the parties' appendix contains condensed transcripts, as here, and we are only cited to an appendix page, we are required to scan four pages of transcript to find the testimony referenced in a brief. The appellant's brief not only references the transcript record with the requisite citations to appendix pages, and although not mandated to do so, the brief also cites to the transcript pages and line numbers. With such citations, we are able to go right to the referenced material. Considering the volume of material we face each day, we appreciate the effort to make our reading task a little easier.

### III. Discussion.

On appeal, Brandee contends the district court, in determining the children should be placed in David's physical care, erred in finding David could minister more effectively to the children's needs and in relying upon the GAL's recommendation and the children's requests. She also argues the court should not have imputed income to her, because she had no income and the court did not explicitly state its reasons for imputing to her income.

### A. Physical Care.

The objective of physical care "is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Changing physical care of children is one of the most significant modifications that can be undertaken. *See In re Marriage of Thielges*, 623 N.W.2d 232, 236 (Iowa Ct. App. 2000). Ordinarily, the parent seeking to modify the physical care provision of a dissolution decree must prove "there has been a substantial change in circumstances since the time of the decree not contemplated by the court when the decree was entered, which is more or less permanent and relates to the welfare of the child." *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004). However, the parties agree there has been such a change, and we therefore do not further address that element.

In addition to the substantial-change-in-circumstances element, the parent seeking to modify physical care "has a heavy burden and must show the ability to offer superior care." *Id.*; *see also In re Marriage of Spears*, 529 N.W.2d 299, 301 (Iowa Ct. App. 1994) (stating "once custody of a child has been fixed, it should be

disturbed only for the most cogent reasons"). As noted above, the controlling consideration is the children's best interests. *Fennelly*, 737 N.W.2d at 101. Consequently, physical care issues are not to be resolved based upon perceived fairness to the spouses or merely choosing which home is better; rather, the issues must be resolved primarily upon what is best for the children, and that requires the parent seeking custody to prove an ability to minister more effectively to the children's well-being. *See id.; see also Hansen*, 733 N.W.2d at 695; *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996). We note the legislature has defined the "best interest of the child" as including, but not limited to, "the opportunity for *maximum continuous physical and emotional contact possible with both parents*, unless direct physical or significant emotional harm to the child may result from this contact." Iowa Code § 598.1(1) (2011) (emphasis added). In considering what custody arrangement is in the best interest of the children, the court must weigh the factors set out under Iowa Code section 598.41(3). Relevant here are the questions of "[w]hether the parents can communicate with each other regarding the child[ren's] needs" and "[w]hether each parent can support the other parent's relationship with the child[ren]." *See* Iowa Code § 598.41(3)(c), (e).

### 1. *Reliance upon the GAL's Recommendation*.

We first address Brandee's argument that the district court erred in relying upon the GAL's recommendations. Brandee asserts the GAL did not address whether David met his heavy burden of demonstrating he could provide superior care to the parties' children. She points out the GAL testified that choosing the superior parent between the two parents was, to a certain extent, like "picking the

lesser of two evils." She then criticizes the GAL's finding the children's preference to live with David tipped the scales in his favor. Nevertheless, Brandee herself cites the GAL's report at times.

Upon our de novo review of the record, we do not find the district court's consideration of the GAL's recommendation and report cause for disturbing the award of physical care to David. It appears that the parties agreed, or at a minimum did not object, to the court's consideration of the GAL's report, which contained the GAL's recommendation, before the modification hearing. *See In re Marriage of Riddle*, 500 N.W.2d 718, 720 (Iowa Ct. App. 1993) ("The recommendation of an independent custodial investigator may be considered in determining primary physical custody, but it is not controlling."); *see also In re Marriage of Joens*, 284 N.W.2d 326, 329 (Iowa 1979) ("[S]uch matters [as the report and recommendation of the attorney for the child] should be considered when properly before the court by agreement or stipulation, as they frequently are."). Additionally, the court did not merely receive and rubberstamp the GAL's report. Rather, the GAL testified in great detail at the modification hearing about her report, her observations, and her findings in the case, and she was extensively cross-examined by Brandee concerning the alleged deficiencies Brandee raises here. The court had the opportunity to listen first-hand to the GAL's testimony and, as fact-finder, determine what weight to give it. Finally, the court made separate factual findings in support of its determination that David is able to provide superior care. We find no error in the court's consideration and reliance upon the GAL's recommendations and report. We therefore turn to the court's superior-care finding.

### 2. *Superior Care.*

Brandee further contends the record does not support the district court's determination that David established he is able to provide superior care to the children. She essentially argues that the court's finding that she is not able to provide superior care does not mean David is therefore the superior caregiver. While that proposition might be true in other cases, the record here demonstrates otherwise.

First, we note that after hearing all of the testimony and observing the witnesses' demeanor and body language, the court found David was credible and Brandee was not. This factored highly into the district court's factual findings and resulting conclusions. Though we are not bound by the court's credibility determinations, upon our de novo review of the record, we find no reason to disturb the court's findings for the following reasons.

One of David's main complaints was that Brandee failed to share details of the children's lives with him. David testified Brandee never advised him of any educational or medical concerns that arose. Conversely, Brandee testified this was not true, claiming she had provided to him information but he "was not interested whatsoever" in being informed of things relating to the children. However, she acknowledged at least one instance where she was supposed to email David a schedule, but she claimed she forgot to do so. She also testified she did not remember David asking for information concerning the children's health but claimed she provided it to him. On both points, she could have stopped there; instead, she continued on, minimizing her own responsibility and asserting David could have just looked up the information himself, such as

looking at his "insurance information [to determine] where [the children] are being seen" or going to a county website to see when county fair events were scheduled. She also testified that she did not recall if she informed David that she was having one of the children evaluated for anxiety and behavioral issues, and though she agreed it was important information, she testified "[t]here's a lot of important things that people forget . . . unintentionally." This does not support her testimony that she willingly provided the information to David.

Additionally, the GAL testified as to numerous statements made to the GAL by the parties' children, such as their concerns about Brandee's temper, as well as their belief that Brandee had improved her treatment of them during the court proceedings but feared the improvement was only for show and not permanent. Brandee denied having a temper or yelling at the children; however, even her spouse did not deny it when asked whether he had seen her yell or be mean or angry:

> Brandee can get upset and you can choose to do one thing—I've witnessed David basically escalate that, you know; another approach is to . . . take a step back from Brandee and give her time to think about things and rationally talk with her and explain things, she's very willing to understand and she calms down.

While David may escalate Brandee's temper, her spouse's testimony demonstrates she gets upset first and then requires time to think and calm down. The GAL also testified that one of the children told her Brandee had a "hissy-fit" in front of the child when David requested the phone number of the child's ball coach. Though Brandee denied it, her own testimony seems to contradict her; rather than simply giving him the number, she testified that she "needed to call the coach to get the assistant coach's number because the coach wasn't going to

be there." Another time, Brandee refused to sit next to David on a couch in a counselor's office, in front of one of their children and the child's counselor. Brandee, David, and that child were at the appointment to address concerns based upon that child's statement of contemplating self-harm. Though Brandee acknowledged at the modification hearing that she should not have done that, she still blamed David because she believed "he strategically sat the way he did so [she] would have to sit by him" and claimed it was her "defense . . . coming up . . . and protecting [herself] first and foremost." Even if that is true, parents "owe it to the child[ren] to maintain an attitude of civility, act decently toward one another, and communicate openly with each other." *See In re Marriage of Bolin*, 336 N.W.2d 441, 447 (Iowa 1983). They are not required to be friends, and, as pointed out in *Bolin*, "[o]ne might well question the suitability as custodian of any parent unable to meet these minimum requirements." *Id.*

The GAL opined that, "whether it's intentional or not, [she did not] think Brandee recognizes the role of a non-custodial parent to be as important." For instance, the GAL explained that Brandee had stated she

> didn't understand why David was upset with the switching of weekends, because, . . . 'A weekend is a weekend. He's still getting the time he's entitled to.' The thing is, it's about the consistency because he would go three weeks without seeing the kids; the kids would go three weeks without seeing him.

Furthermore, the GAL testified that the teenage children expressed sincere desires to live with David. It is true the preference of a child is a relevant but non-conclusive factor in custody determinations. *See In re Marriage of Ellerbroek*, 377 N.W.2d 257, 258 (Iowa Ct. App. 1985); *see also* Iowa Code § 598.41(3)(f) (permitting consideration of a child's wishes regarding a custodial

arrangement, taking into account the child's age and maturity). However, the GAL testified their desires to live with David were much more than their belief they would "have more things at his home." The GAL explained that the children believed David provided more support to them and to their relationship with Brandee, and the GAL believed their preference should be considered.

Here, the evidence supports a finding that both parents love their children and are capable of caring for and meeting their needs. However, given the objective of a physical care determination, to place the children in the environment most likely to bring them to healthy physical, mental, and social maturity, coupled with the best interests of the children and their own desires, as well as the parties' abilities to communicate with each other and support the children's relationship with the other, we believe David established, in spite of the acrimony between the parties, his heavy burden that he had the ability to offer the children superior care. This is not to say that David is a saint. While the record shows there has been improved communication on the part of both parents, this court expects the parties will follow through with the current court-ordered parenting schedule and facilitate a healthy and nurturing environment for their children. It is time for the parents to put their children first and work together as grownups for the best interests of everyone, and we trust they understand the importance of showing respect for one another as they continue their continuing venture of joint parenting. For all these reasons, we affirm the district court's modification of the decree placing the children's physical care with David.

### B. Child Support.

Having found the district court did not err in placing the children in David's physical care, we must address Brandee's contention that the court erred when it deviated from the child support guidelines by imputing income to her. Brandee argues that because, at the time of trial, she was the custodial parent and a stay-at-home mom with no income, income should not have been imputed to her for child support purposes.

In its findings of fact, the district court found:

> Brandee is a farm spouse, and her income for child support computation purposes is imputable to be $20,800. She has an AA degree and has not held regular employment but spent a great deal of her time raising the children and helping on the farm with whatever needs to be done, including filling in at a hardware store her husband purchased recently.

Brandee maintains the trial court erred in failing to make the requisite determination that if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child(ren) or to do justice between the parties. *See* Iowa Ct. R. 9.11(4). While it is true no such written determination can be found in the district court's ruling, we make such a finding upon our de novo review of the record.

The purpose of the Iowa child support guidelines "is to provide for the best interests of the children by recognizing the duty of both parents to provide adequate support for their children in proportion to their respective incomes." Iowa Ct. R. 9.3(1). Under our rules, "the court should determine the amount of support specified by the guidelines," which are presumed to calculate the "correct amount of child support to be awarded." Iowa Ct. R. 9.4. However, that

presumption may be rebutted if the court finds the calculated amount fails "to provide for the needs of the children or to do justice between the parties under the special circumstances of the case." *Id*. Nevertheless, "[t]he court shall not vary from the amount of child support that would result from application of the guidelines *without a written finding that the guidelines would be unjust or inappropriate* as determined under the . . . criteria" set forth in Iowa Court Rule 9.11. Iowa Ct. R. 9.11 (emphasis added).

Furthermore,

The court may impute income in appropriate cases subject to the requirements of rule 9.5. If the court finds that a parent is voluntarily unemployed or underemployed without just cause, child support may be calculated based on a determination or earning capacity. A determination of earning capacity may be made by determining employment potential and probable earnings level based on work history, occupational qualifications, prevailing job opportunities, earning levels in the community, and other relevant factors. The court shall not use earning capacity rather than actual earnings or otherwise impute income unless a written determination is made that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child(ren) or to do justice between the parties.

Iowa Ct. R. 9.11(4).

Here, the district court failed to make a written determination that, if Brandee's actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the children or to do justice between the parties. The rule requires such a determination be made. *Id*. Nonetheless, we, on our de novo review, make such a determination. David sufficiently rebutted the presumption that Brandee's actual income should be used to calculate child support. Brandee is educated and experienced in farming. She does in fact work for her husband's Mikel's enterprises and is

capable of doing the things his employees do. She hasn't been paid because, "It's a service provided, husband-wife relationship. It's his business and I'm willing to fill in when need." She works at the hardware store about ten hours a week and also works on the farm. Mikel's employees earn ten dollars an hour. Brandee is capable of earning ten dollars an hour. Additionally, she apparently voluntarily gave up her income-producing cattle business when she gave her cows to Mikel. We also note she no longer has the responsibilities for physical care of the children. Based upon the circumstances presented to us, we conclude that if Brandee's actual earnings were used to compute child support, substantial injustice would occur. In other words, imputing earnings to Brandee is necessary in order to do justice between the parties.

In imputing income of $20,800, Brandee asserts the district court chose to endorse, without explanation, the "arbitrary" figure utilized by David in the child support guidelines worksheet he submitted to the court. While it is true the court proffered no explanation for the amount of income it imputed to Brandee, we do not find the figure of $20,800 to be arbitrary.

Brandee received an AA degree in animal science. In 1999, prior to having children, Brandee worked at a manufacturing plant making $20,000 or more. After the birth of her first-born, and until he became sick, Brandee worked at a factory for minimum wage. In 2011, she reported an adjusted gross income of $7529 after receiving $14,355 in gross income working for her mother's farm operation. She last worked for that operation on April 1, 2012. She made a profit selling a cow in 2013, but she gave the remainder of her potential income-producing cows to her husband, Mikel. He testified she gave him ten cows worth

$10,000. Brandee testified she worked approximately ten hours per week at her husband's hardware store. She was not paid for that work. She also did chores around the farm operation and was "capable of doing everything that [Mikel] would have a hired man do." She is not paid for this work. Mikel testified he paid his hired farm hand "[a]bout [ten dollars] an hour. Which this varies. It depends. It's anywhere from [eight] to [ten dollars] an hour." Mikel testified he paid his hired help at his store ten dollars an hour. Upon our de novo review of the record, we determine the $20,800 earning capacity attributed to Brandee by the district court was proper and fully supported by the evidence.[2]

### C. Appellate Attorney Fees.

Finally, both parties request appellate attorney fees. Such an award rests in our discretion and is based on the merits of the appeal, the parties' needs, and their ability to pay. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). We decline to award either party appellate attorney fees.

### IV. Conclusion.

Upon our de novo review of all of the evidence presented, weighing the best interests considerations set forth above, and giving weight to the district court's fact and credibility findings, we agree with the court's determination that David established his heavy burden of showing his ability to offer the children superior care. We therefore affirm its modification of the parties' dissolution decree placing the children in David's physical care. David also sufficiently rebutted the presumption that Brandee's actual income should be used to

---

[2] $20,800 is arrived at by taking ten dollars an hour times forty hours a week, times fifty-two weeks a year.

calculate child support. The evidence establishes that imputing earnings to Brandee is necessary to do justice between the parties. Furthermore, the record fully supports a finding that Brandee has an earning capacity of $20,800. We therefore affirm the district court's imputation of $20,800 of income to Brandee for purposes of computing child support. We award no appellate attorney fees, and costs on appeal are assessed to Brandee.

**AFFIRMED.**