**In re The MARRIAGE OF Michael GRANTHAM and Tammara Sue Grantham.**

**Upon the Petition of Michael Grantham, Appellant,**

**And Concerning Tammara Sue Grantham, Appellant.**

**No. 03–2100.**

Supreme Court of Iowa.

June 3, 2005.

Rehearing Denied June 29, 2005.

Bruce J. Toenjes of Nelson & Toenjes, Shell Rock, for appellant.

Melissa A. Nine and Barry S. Kaplan of Kaplan & Frese, LLP, Marshalltown, for appellee.

Michael Kuehn, LTC Staff Judge Advocate, Johnston, for amicus curiae Iowa National Guard.

CARTER, Justice.

Michael Grantham, the custodial parent of two minor children pursuant to a decree of dissolution, appeals from adverse rulings in proceedings to modify child custody. Those proceedings were pursued by the children's mother, Tammara Grantham, following Michael's call to active duty with the Iowa National Guard. The district court modified the dissolution decree by changing primary care of the children from Michael to Tammara. The court of appeals reversed the district court's order modifying the dissolution decree, relying in part on the Soldiers and Sailors Civil Relief Act (SSCRA).[1] After reviewing the record and considering the arguments presented, we vacate the decision of the court of appeals and affirm the district court's orders and decree.

The marriage of Michael and Tammara was dissolved on July 11, 2000. At the time, their two children, Jeremy and Brianna, were ages ten and six, respectively. The decree provided for joint custody of the children with their primary physical care being placed with Michael. Tammara was required to make child support payments.

Michael was called to active duty with the Iowa National Guard on August 21, 2002, with orders to report to his unit's armory at Estherville, Iowa, on August 24. He apparently had been anticipating that occurrence because the children had informed Tammara earlier in the month that Michael would be leaving for military service and that he had arranged for the children to reside with his mother, Irmgard Grantham, while he was away on military duty. Tammara objected to that arrangement. She attempted to reach resolution of the issue with Michael before he reported for duty.

Michael reported for duty on August 24 with the issue still unresolved. He was able to return home on August 27 for a meeting with his attorney. He also met with Tammara and her attorney on that date. Michael reviewed a military family care plan with his attorney providing that the children would be cared for by Irmgard during his military service. Later the same day, Michael and his attorney met with Tammara and her attorney and negotiated an agreement that provided Tammara was to have temporary custody of the children commencing on August 30

---

1. The federal legislation at issue here is the Soldiers and Sailors Civil Relief Act of 1940. 50 U.S.C.App. §§ 501–591 (2002). Substitute legislation was enacted effective December 19, 2003, which substantially changed the provisions of the Act. Because this case was tried and decided prior to December 19, 2003, it is governed by the previous legislation.

to continue during Michael's absence for military service. The agreement provided that the children were to be promptly returned to Michael on the completion of his military duty. Although Tammara resided in Allison, Iowa, the agreement provided that she would continue to have the children attend school in Clarksville, where they had been residing with Michael.

When Tammara attempted to pick up the children on August 30, she was met by Michael who told her he was not signing the agreement and had finalized a military family care plan providing that the children would be in Irmgard's care throughout his military service. He advised her that her contact with the children during this time would be limited to the periods of visitation she was granted in the dissolution decree.

On September 4 Tammara filed a petition seeking permanent physical care of the children, temporary custody of the children pendente lite, temporary and permanent support, and a suspension of her child support obligations. The district court set a hearing on those requests for September 20. Michael was served with the petition on September 5 while serving at an armory in Estherville, Iowa. On September 7 Michael left with his unit for Fort Knox, Kentucky. On September 10, through his attorney, Michael filed a request for stay of the child custody proceedings pursuant to the SSCRA "until he returned to civilian status."

The district court denied Michael's application for a stay and set a scheduling conference for October 10. That conference was held without Michael being present and resulted in a hearing being scheduled for October 29 on the request for temporary orders. Following that hearing, which was held without Michael's presence, the district court entered an order temporarily placing the children with Tammara, terminating her support obligation, and requiring Michael to pay child support.

Michael was on active duty until September 2, 2003. He was, however, able to be present on August 27, 2003, when the trial of Tammara's petition for permanent change of custody was held. Following that trial, the district court ruled that permanent physical care of the children should be changed from Michael to Tammara. The court also entered orders providing for Michael's visitation with the children and his payment of child support. Other facts that bear on this controversy will be considered in connection with our discussion of the legal issues presented.

## I. *Scope of Review.*

This matter was heard and determined in the district court by equitable proceedings. Consequently, our review of both the facts and the law is de novo. Iowa R.App. P. 6.4; *In re Custer's Estate*, 229 Iowa 1061, 1064, 295 N.W. 848, 851 (1941).

## II. *The Court of Appeals Decision.*

In reversing the district court, the court of appeals placed particular emphasis on the temporary placement of the children that occurred following Michael's call to active duty. The court concluded that Tammara's request for temporary custody should have been stayed pursuant to the SSCRA, thereby leaving the children with their paternal grandmother in accordance with Michael's wishes.[2] Based on this

2. The court of appeals also concluded that the court had no authority to enter a temporary custody order in connection with Tammara's filing of an application to modify the custody provisions of the dissolution decree. The court concluded that temporary custody orders were available only in original dissolution filings and not in requests for modification of existing decrees.

premise, the court of appeals reasoned as follows:

> [M]ost if not all of the reasons advanced at trial by Tammara for awarding her physical care of the children occurred after Michael was placed on active duty. Tammara cites several instances of poor communication on the part of Michael during the months of Michael's active duty. She also contends Michael's decision to designate Irmgard as guardian in his absence evidences his intent to undermine the children's relationship with Tammara. Finally, Tammara asserts it is in the children's best interest to be placed with her as she claims the children's demeanor and academics have improved while they were living with her during Michael's active military duty. All of these assertions occurred after the district court granted Tammara temporary physical care of the children and would not have occurred but for this change in placement. Thus, reliance on them would only further prejudice Michael by exacerbating the statutory and due process violations accompanying the denial of his request for a stay of the proceedings and the resulting temporary care order. Further compounding these errors is the reality that because Michael's military service limited his contact with his children, and because he returned home from his service only a short time prior to the [final] custody hearing, the temporary order gave Tammara almost exclusive access to the children from November 2002 to the time of the trial. This impeded Michael's ability to refute Tammara's evidence or offer any recent facts reflecting positively on his relationship with the children. . . .

The only legitimately asserted change in circumstance that does not rely on the change in temporary placement for its existence is Tammara's contention that she is now stable. We find this fact woefully insufficient to carry her heavy burden of demonstrating that she can minister more effectively to the children's needs. . . .

In commenting on the application for stay under the SSCRA, the court of appeals stated:

> We recognize the dilemma presented to Tammara and other noncustodial parents. They may not know of the Family Care Plan until it is implemented or preparations for implementation are taking place. Yet, it is at this point that the stay provisions of the SSCRA apply. Therefore, by the time the noncustodial parent can challenge the Family Care Plan, the proceedings to do so are subject to a stay.

We are unable to agree that the SSCRA is so inflexible that it precluded the district court from determining a matter of immediate importance concerning the temporary custody of these children.

### III. *The Temporary Custody Ruling.*

In reviewing the decision of the court of appeals, we disagree at the outset with that court's conclusion that matters occurring following Michael's call to active duty may not be considered in determining whether Tammara has established that she is able to minister more effectively to the children's needs than Michael. Even if we were to agree with the court of appeals that the request for temporary custody should have been stayed under the SSCRA, a circumstance that would have denied Tammara temporary custody of the children, it is not in the interests of an accurate adjudication of Tammara's request for permanent custody, or in the best interests of the minor children, to

ignore matters that happened during Michael's absence if those matters weigh in favor of a change of child custody. Having said that, we hasten to add our conclusion that the district court acted properly in denying Michael's request for a stay of the temporary custody proceedings.

■ The SSCRA does not mandate a stay in every case. *Boone v. Lightner*, 319 U.S. 561, 575, 63 S.Ct. 1223, 1231, 87 L.Ed. 1587, 1596 (1943); *Keefe v. Spangenberg*, 533 F.Supp. 49, 50 (W.D.Okla.1981). To warrant a stay under this legislation, it must be determined that substantial rights of the absent serviceman will be prejudiced if the effort to postpone the proceedings is denied. *Keefe*, 533 F.Supp. at 50.

This court commented on the SSCRA of 1940 in *Semler v. Oertwig*, 234 Iowa 233, 12 N.W.2d 265 (1943). We recognized that the purpose of such legislation was "to protect both the nation and the interests of those engaged in its defense, keeping in mind, nevertheless, that it is to be used as a shield for defense, and not as a sword for attack *or as an instrument for the oppression of opposing parties.*" *Semler*, 234 Iowa at 241, 12 N.W.2d at 270 (emphasis added).

■ The district court found that Michael attempted to conceal the arrangement for his mother's custody of the children pursuant to a military family care plan until it was too late for Tammara to seek judicial relief before he was called to active duty. The record strongly supports that finding. To allow Michael to continue the temporary custody proceeding until after his return to civilian status would have been a serious denial of Tammara's rights. As parent and joint custodian of the children, her claim to temporary custody was clearly superior to that of Michael's mother. That she would receive temporary custody on an application to the court was an almost certain occurrence. Under the circumstances presented, Michael's representation through legal counsel, who called witnesses advocating his position, including Tammara's own father, resulted in no substantial prejudice of Michael's rights. He has failed to indicate in any manner how his personal presence at the hearing would have changed the result.[3]

■ We also disagree with the conclusion of the court of appeals that the district court was without authority to enter an order involving temporary custody of the children in connection with her request for a change of the children's permanent primary care. We agree with the court of appeals that the filing of the petition to modify the child custody provisions of a dissolution decree does not carry with it a right for the determination of temporary custody pendente lite. Modification proceedings differ from original actions in this regard because, in original actions for dissolution, the parties start out with equal rights to child custody, and their separation creates a need for temporary orders until permanent orders are entered at the conclusion of the litigation. As the court of appeals correctly noted, once child custody has been finally settled in a dissolution decree, the provisions of the decree should continue in force until such time as

3. Our decision in *Ratliff v. Ratliff*, 234 Iowa 1171, 1177, 15 N.W.2d 272, 275 (1944), is not in conflict with our present conclusion. That case also involved an attempt to modify the *custody provisions of a divorce decree and a* stay pursuant to the SSCRA was approved by this court until the person in military service was available for trial. Unlike the present case, however, the continuance that was requested concerned the trial of the permanent custody issue, rather than a temporary-custody determination. As a result, the stay that was granted in *Ratliff* merely preserved the status quo. In the present case, there was no status quo to maintain once Michael was called to active military duty.

the decree is modified. No need exists for temporary orders in the interim.

We are satisfied, however, that the recognition of these principles does not defeat the jurisdiction or authority of the district court to make the temporary custody determination at issue in the present case. The district court's authority to act in the matter was in no way dependent on the filing of a petition for a permanent change of custody. Michael's absence from the parental role as a result of his military service necessitated that a temporary reassignment of custodial responsibilities be made without delay. The fact that the request for temporary custody was filed simultaneously with a petition to modify the primary care provisions of the decree on a permanent basis did not diminish that necessity.

### IV. *Change of Permanent Custody.*

 The court of appeals correctly noted that courts should only modify the custodial terms of a dissolution decree if it has been established that conditions since the decree have so materially and substantially changed that the children's best interests make it expedient to make the requested change. *See In re Marriage of Frederici,* 338 N.W.2d 156, 158 (Iowa 1983). This requires that the parent seeking to take custody from the other prove an ability to administer more effectively to the children's needs. *Id.; In re Marriage of Whalen,* 569 N.W.2d 626, 628 (Iowa Ct.App.1997). We have previously set forth the conclusions of the court of appeals, which stated that all of the reasons advanced by Tammara for awarding her physical care occurred after Michael was placed on active duty. We disagree.

In ordering a change of the children's primary care, the district court found that, beginning almost immediately following the dissolution decree, Michael has main-

tained a persistent pattern of conduct that has served to diminish the children's relationship with their mother. He has refused to acknowledge her presence when he and the children are in her company. He has refused to allow the children to acknowledge her presence in public settings. He has inappropriately involved the children in communicating to their mother matters concerning the children's well-being that should have been discussed privately between their parents. Indeed, Michael has consistently refused to have any direct communication with Tammara throughout the period following the dissolution decree and openly avowed at trial that this behavior would continue. In *In re Marriage of Bolin,* 336 N.W.2d 441 (Iowa 1983), we observed:

> Even though the parents are not required to be friends, they owe it to the child to maintain an attitude of civility, act decently toward one another, and communicate openly with each other. One might well question the suitability as custodian of any parent unable to meet these minimum requirements.

*Bolin,* 336 N.W.2d at 447. The district court correctly found that Michael's conduct in this regard has been a continuing blemish on his parental role.

The record further reflects that, following the dissolution decree and prior to Michael's active military duty, the children's demeanor toward and respect of their mother was less than appropriate. That situation has improved substantially since their placement with their mother pursuant to the court's temporary order. In summary, as the district court concluded, "circumstances have significantly changed since the entry of the decree and Tammy is presently the most effective parent to both children."

We have considered all issues presented and conclude that the decision of the court

of appeals should be vacated. The district court's decree is affirmed. The parties shall pay their own attorney fees on appeal.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT DECREE AFFIRMED.**