**IN THE COURT OF APPEALS OF IOWA**

No. 13-1159
Filed April 30, 2014

**IN RE THE MARRIAGE OF ERIC J. WILLIS
AND DAWN E. BERGOM**

**Upon the Petition of
ERIC J. WILLIS,**
        Petitioner-Appellee,

**And Concerning
DAWN E. BERGOM,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Paul L. Macek,

Judge.


        Dawn Bergom appeals the district court's order modifying the child

custody arrangement and awarding Eric Willis attorney fees.  **AFFIRMED.**


        Catherine Zamora Cartee and Nathan Legue of Cartee Law Firm, P.C.,

Davenport, for appellant.

        Wendy S. Meyer of Lane & Waterman, L.L.P., Davenport, for appellee.


        Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**VOGEL, P.J.**

Dawn Bergom appeals the district court's order modifying the child custody arrangement of her and Eric Willis's dissolution decree. Dawn argues the court incorrectly found a substantial change in circumstances occurred warranting Eric being awarded physical care of the children. She also asserts the court abused its discretion in denying her motion to amend the pleadings to conform to the proof to include a contempt cause of action, and in awarding Eric one-half of his attorney fees. Because we agree with the district court the breakdown in communication between Eric and Dawn is a substantial change in circumstances not contemplated by the decretal court, and Eric demonstrated a superior parenting ability, we affirm the physical care change. The court also properly denied Dawn's motion to amend, and did not abuse its discretion in awarding Eric one-half of his attorney fees. Consequently, we affirm. We also award Eric one-half of his appellate attorney fees.

**I. Factual and Procedural Background**

Eric and Dawn were married on November 27, 1999. They have two sons, ages thirteen and ten at the time of the modification hearing. After Dawn's year-long service in Iraq, the parties divorced. A decree of dissolution was entered on June 29, 2009, in which the parties agreed to joint legal custody. Dawn was granted physical care, though the arrangement was more akin to shared care as Eric had twenty-five weeks of visitation per year.

In October of 2010, Dawn filed an application to show cause in which she requested Eric be held in contempt, asserting a variety of visitation-related issues. In response, Eric sought to modify the decree so as to clarify some

visitation provisions. This dispute was successfully mediated and an agreed-upon order was entered on February 23, 2011. The order addressed the division of financial responsibilities between the parties as well as some specific issues regarding visitation and the children's attendance of religious activities.

On June 18, 2012, Dawn filed an application to modify the dissolution decree. She claimed there had been a substantial change in circumstances, and faulted Eric for various parenting and visitation missteps. The application requested that Eric's visitation "be terminated, substantially reduced, or supervised." She further requested that Eric be ordered to pay her attorney fees and court costs. Eric filed an answer and counter-application for modification, in which he requested the court modify the custodial arrangement and award him physical care subject to Dawn's right of visitation, child support, medical support, and attorney fees.

The matter was tried on May 28 and 29, 2013, and the district court entered its ruling on July 11. The court found a substantial change in circumstances had occurred due to the parties' "utter breakdown in communication," and granted Eric's request for physical care subject to Dawn's rights of visitation. Dawn was ordered to pay $698 in monthly child support, as well as pay one-half of Eric's attorney fees. In its findings of fact, the court noted various instances in which the parties failed to communicate, primarily faulting Dawn for disrupting communications and causing a negative effect on the boys' day-to-day lives.

Dawn appeals.

## II. Standard of Review

Review of a district court's modification of a dissolution decree is de novo. *In re Marriage of Wessels*, 542 N.W.2d 486, 490 (Iowa 1995). "Although our review of the trial court's award is de novo, we accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Spiegel*, 553 N.W.2d 309, 319 (Iowa 1996). We review the district court's decision to grant or deny a motion to amend the pleadings to conform to the proof for an abuse of discretion. *Scott v. Grinnell Mut. Reinsurance Co.*, 653 N.W.2d 556, 561 (Iowa 2002). Our review of the grant or denial of attorney fees is also for an abuse of discretion. *In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997).

## III. Modification Decree

Dawn first asserts the district court erred in modifying the physical care arrangement. She argues there was no substantial change in circumstances allowing the court to modify the dissolution decree. She also claims Eric did not demonstrate superior parenting ability such that he should be granted physical care.

As the district court noted, the original decree, with Eric having twenty-five weeks of visitation per year, "was actually shared custody." The ability of the parents to communicate is an important factor in determining whether joint physical care remains in the children's best interests. *See In re Marriage of Hansen*, 733 N.W.2d 683, 698–99 (Iowa 2007) (explaining that "[e]ven a low level of conflict can have significant repercussions for children"). The complete breakdown of communication between the parents may constitute a substantial

change in circumstances. *Melchiori v. Kooi*, 644 N.W.2d 365, 367–68 (Iowa Ct. App. 2002). In *Melchiori,* our court recognized discord between parents that disrupts a child's life may warrant modification of the decree to designate a primary physical caregiver if it appears that the children, by having a primary physical caregiver, will have superior care. *Id.* at 368.

The district court described the situation between Dawn and Eric in the following manner:

> [N]o . . . ability to communicate exists today. Dawn testified that the two have a "tremendous" difficulty communicating. The court finds even this to be an understatement. It appears, based on the tenor of emails and the testimony of both parties, that Dawn literally refuses to speak to Eric. The only means of communication she will abide is electronic. Dawn based this decision to not speak to Eric on a prior recommendation by a family counselor. On his part, Eric has attempted to nurture communication between him and Dawn by, for example, being cordial on the phone when Dawn calls to speak with their children and by offering to start dialogues regarding the children via email. This effort has proved fruitless. For example, while the boys are at Eric's house, they would receive phone calls from Dawn. Answering the phone, Eric would say "hello," and if he is met with "dead air," as he called it, he would hand the phone to his children and would tell them that their mother was calling for them. In other words, Dawn could not even utter the words, "Hello, may I speak with the children?"

Upon a de novo review of the record, we agree with the district court that this is an accurate characterization of the situation between the parties. Their communication has broken down to the extent that they cannot discuss—electronically, face-to-face, or over the phone—day-to-day issues involving the children. More disturbing is that serious issues also suffer from this impairment, at the expense of the children. Such "an utter breakdown in communication" was not contemplated in the original dissolution decree, and thereby constitutes a substantial change in circumstances. *See id.*

It is also not in the children's best interest to continue the near joint physical care arrangement. Both parties, as well as the children's counselor, testified it causes stress on the children to see their parents unable to speak to each other. The intense conflict between the parties over even the most minor matters also places great stress on the children.

However, the parent seeking to take custody from the other must prove an ability to administer more effectively to the children's needs. *In re Marriage of Grantham*, 698 N.W.2d 140, 146 (Iowa 2005). We agree with the district court that Eric has adequately demonstrated his superior ability to parent. The record is replete with instances in which he attempted to calmly and politely communicate with Dawn regarding the children, only to be rudely rebuffed. She has refused to put forth the effort to appear polite or even civil to Eric. As she testified at trial:

> Q: When Eric comes to the doctor's office and sits next to the family, you think that's not being supportive of the family? A: When he sits right next to me, that's a concern.
> Q: You can't sit next to Eric in front of your boys in a public place? A: I'm not the one who sat down with 12 other seats available.
> Q: Okay. You cannot sit next to Eric in a public venue with your children, is that right? A: I'm not going to do that.
> Q: Okay. So if you're at a school activity and the only seat left is with Eric and the boys, you're not taking it, is that right? A: I will stand.
> Q: Okay. What signal do you think that sends to the boys? A: That we're not married.
> Q: Can't you get past that for the sake of your children, at least show them when you're all together that you can get along, to make it easier on them? A: I'm not going to pretend. If he's not going to put the actual effort into it, I'm not going to pretend. I'm teaching my children to be honest.

The district court noted that Dawn rejected co-parenting with Eric, and described some of her behavior as "unnecessarily authoritative and brusque." As our supreme court has noted:

> Even though the parents are not required to be friends, they owe it to the child to maintain an attitude of civility, act decently toward one another, and communicate openly with each other. One might well question the suitability as custodian of any parent unable to meet these minimum requirements.

*In re Marriage of Bolin*, 336 N.W.2d 441, 447 (Iowa 1983). In this case, the record supports the district court's determination that Dawn has refused to make any effort to communicate with Eric for the sake of the children. Moreover, in concluding Eric possesses the superior ability to parent, the court noted Eric's involvement in the PTA, his encouragement of the boys' involvement in sports and other extracurricular activities, "his willingness to be co-parents with Dawn, and most importantly, his ability to put his children's well-being above any personal disdain he might or might not still harbor for Dawn." Consequently, we affirm the court's decision to modify the custody order to grant physical care to Eric.

**IV. Motion to Amend the Pleadings**

Dawn also argues the district court erred in denying her motion to amend the pleadings to conform to the proof to add an additional division of contempt, in which she accused Eric of willfully disobeying the decretal court's order. Dawn moved to amend the pleadings during trial, following her direct testimony. Eric objected, asserting no prior notice of such an action and no opportunity to prepare for a quasi-criminal proceeding. The court denied the motion, finding there had been no service of a rule to show cause.

On our review of the record, Dawn's testimony did not establish Eric violated a court order such that the court should have amended the pleadings to conform to the proof. While Dawn made allegations during her testimony, no actual proof was offered. Moreover, all of the alleged incidents she complained of were known to Dawn well before trial. Dawn's petition to modify sought to have Eric's visitation terminated or substantially reduced. Eric countered, seeking physical care of the boys. To turn a visitation and custody proceeding into a contempt action would substantially change the issues before the court, transforming it into a quasi-criminal proceeding. *See Ary v. Iowa Dist. Court for Benton Cnty.*, 735 N.W.2d 621, 624 (Iowa 2007) (noting that contempt is quasi-criminal in nature). Consequently, the district court did not abuse its discretion in declining to allow Dawn to amend the pleadings to what she claimed would conform to the proof.

**V. Attorney Fees**

Dawn further claims the district court erred in ordering her to pay one-half of Eric's attorney fees. An award of attorney fees rests in the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *Romanelli*, 570 N.W.2d at 765. The controlling factor in the award of attorney fees is the ability to pay the fees. *In re Marriage of Muelhaupt*, 439 N.W.2d 656, 663 (Iowa 1989). The court can also award attorney fees to the prevailing party. Iowa Code § 598.36 (2013).

In its order, the district court stated:

Dawn initially brought the application for modification, asking for Eric's visitation rights to be terminated, substantially reduced, or supervised. This is a *serious* request. She has now rescinded her

position. In effect, Dawn caused over a year's worth of attorney's fees for both parties for nothing, and, when faced with Eric's counter application, Dawn suddenly requested the court to leave the ineffective arrangement as it is. Eric is the prevailing party. The parties' financial situations are similar. Dawn caused the need for attorney fees. Dawn should pay one-half of Eric's attorney's fees in connection with this litigation: $10,709.41.

Upon consideration of the proper factors, we find no abuse of discretion in the court's award of attorney fees.

In his appeal, Eric requests appellate attorney fees. In considering such a request, we look to the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Wood*, 567 N.W.2d 680, 684 (Iowa Ct. App. 1997). Both parties have a good income. However, Dawn initiated this action and Eric was forced to defend the decision of the district court. With these considerations in mind, we award Eric one-half of his $8598.00 appellate attorney fees, that is, $4299.00.

Having considered all issues presented in this appeal, we affirm the order of the district court.

Costs of this appeal assessed to Dawn.

**AFFIRMED.**