# IN THE COURT OF APPEALS OF IOWA

No. 16-0763
Filed February 22, 2017

**DAVID RALPH BERRIAULT,**
    Petitioner-Appellee,

**vs.**

**JUNE RENEE ALDEN,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Floyd County, Rustin T. Davenport, Judge.

A mother appeals the district court's modification of a decree establishing custody and visitation for her nine-year-old son. **AFFIRMED.**

William T. Morrison of Morrison Law Firm, Mason City, for appellant.

David H. Skilton of Cronin, Skilton & Skilton, P.L.L.C., Charles City, for appellee.

Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

David Berriault and June Alden are the parents of J.D.B., who is now nine years old. David sought to modify a custody decree to obtain physical care of J.D.B., and the district court granted his request. On appeal, June contends David failed to show a substantial change in circumstances since the entry of the original decree. In addition, she denies undermining David's relationship with J.D.B. and contends removing J.D.B. from her care would not be in the child's best interests. After our independent review of the record, we find David proved a change of circumstances to justify modifying the physical-care award in the custody decree.

## I.      Facts and Prior Proceedings

David and June were never married to each other. They had one child together, J.D.B., who was born in 2007 in Barrie, Ontario, Canada. The family lived together after J.D.B.'s birth, but the parents' relationship soon began to deteriorate. June moved to Charles City with J.D.B. in 2009. The two returned to Barrie in 2010, but David and June were unable to reconcile their differences. In early 2011, David and June permanently ended their relationship, and June and J.D.B. returned Charles City. David remained in Barrie. After the move, David and June struggled to agree about visitation. June would not allow David to take J.D.B. to Canada, so David traveled to Charles City for visits with his son. June insisted on supervising.

In October 2012, David filed a petition for determination of custody and support. David requested sole legal custody and physical care of J.D.B., citing June's "mental health problems," her refusal to allow David unsupervised

visitation with J.D.B., her "extensive mood swings" and violence towards David in J.D.B.'s presence, and unsafe living conditions in her home. June denied David's allegations and claimed David had sexually abused J.D.B. in 2010. She, too, asked for sole legal custody and physical care of J.D.B.

On September 25, 2013, the district court issued a decree awarding David and June joint legal custody of J.D.B. and placing physical care with June. The court found insufficient evidence in the record to establish either June's sexual-abuse allegation or David's claim regarding June's mental health. And although the court was "impressed by David's enthusiasm and desire to be an involved father," because J.D.B. was thriving in his living situation with June, the court found it would be in J.D.B.'s best interests for June to continue exercising physical care. The court granted David visitation with J.D.B. for a minimum of one weekend per month and during portions of J.D.B.'s school breaks, including several weeks over the summer. The court also ordered June to allow contact between David and J.D.B. via telephone or Skype at least once a week. Finally, the court admonished June that failure to follow the order and "support David's role as [J.D.B.'s] father" could result in a change of custody.

The antipathy between David and June continued after the entry of the decree, and about fifteen months later—on January 12, 2015—David filed a petition to modify J.D.B.'s custody. David asserted June continued to undermine his parental authority and to interfere with his relationship with J.D.B. June denied those claims and contended David had not shown a significant change in circumstances to justify modification.

The district court held a hearing on David's petition to modify on September 16 and 17, 2015. The testimony of both parents revealed their ongoing struggle to place J.D.B.'s best interests above their resentment toward each other. Both parents claimed the other interfered with their telephone conversations with J.D.B., and both complained of the other's inflexibility in matters related to visitation.

David raised many of the same issues he had presented in the original custody hearing. But he also testified about June's behavior since the custody decree and what he viewed as her attempts to undermine his relationship with J.D.B. Most striking were the incidents David described arising out of June's continued accusations of sexual abuse. At the beginning of his summer visit with J.D.B. in 2014, June called the Barrie police department, where David worked as a sergeant, to report he had sexually abused J.D.B. in 2010, the same allegation she had raised in the original custody proceeding. As part of the ensuing investigation, law enforcement officers interviewed J.D.B. for nearly an hour and ultimately concluded the report was unfounded. David also recounted a conversation he had with J.D.B. the following summer, in which J.D.B. revealed his mother had advised him to "scream and cry for help" during visitation, so David would have to bring J.D.B. back to Iowa.

June testified she believed J.D.B. had a good relationship with David, but David didn't "use his visits well." She denied trying to undermine their relationship. But during her testimony, though her attorney did not ask her about it, June again asserted David had sexually assaulted J.D.B. in 2010. June admitted speaking to the Barrie police about the alleged sexual abuse, which led

to the investigation of David, but was unclear about what prompted her to lodge the complaint when she did. She also acknowledged telling J.D.B. to call for help if he was in trouble before his 2015 summer visit but claimed it was because J.D.B. had expressed concerns about visitation with David.

In a report filed with the court, J.D.B.'s guardian ad litem (GAL) questioned June's veracity and strongly recommended J.D.B. be placed with David. According to the GAL, J.D.B. initially told her he could be happy living with either parent, but when she spoke with him again at June's residence, J.D.B. told her his earlier statement was a "big mistake" and he only wanted to live with his mother. The GAL opined that in the second conversation, "it was painfully obvious that [J.D.B.] had been coached and was very anxious to recite what he was 'supposed' to say."

Following the hearing, the district court granted David's modification request and awarded him physical care. The court specifically found June was not credible in her testimony that David had sexually abused J.D.B. and "that June purposely contacted the Barrie Police Department to try to sabotage David's summer visitation with J.D.B." The court also observed that June appeared "less stable" throughout the hearing, while David was "more grounded and demonstrate[d] a better awareness of how to provide for the physical and emotional needs of J.D.B." June now appeals.

## II.     Standard of Review

We review custody-modification proceedings de novo. *See In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). But because the district court has the opportunity to hear the evidence and view the witnesses in person, we give

considerable weight to the district court's credibility determinations. *See In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007). The paramount consideration guiding our analysis is the best interests of the child. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).

### III.     Analysis

As the party seeking modification, David was required to prove by a preponderance of the evidence that "conditions since the decree was entered have so materially and substantially changed" that J.D.B.'s "best interests make it expedient to make the requested change." *See id.* (citation omitted). These changed circumstances must: (1) not have been contemplated at the time the court entered the decree, (2) not be temporary, and (3) relate to J.D.B.'s welfare. *See id.* David must also demonstrate he can more effectively minister to J.D.B.'s needs. *See id.* On appeal, June argues David has failed to prove a material and substantial change in circumstances and a change in custody is not in J.D.B.'s best interests. We address each argument in turn.

**Material and Substantial Change in Circumstances.**  David urges us to adopt the district court's conclusion "that June's inability to move past her false allegation of sexual abuse" and her use of that allegation to undermine David's relationship with their son was a substantial change in circumstances. But June contends David's complaints about her behavior are "virtually the same issues he raised at the time of the original proceeding." Moreover, citing David's testimony that J.D.B. is "an amazing child" and the father-son connection is stronger than ever, June argues she has not interfered with the relationship between David and J.D.B.

Contrary to her claim, the record shows June *has* tried to undermine the relationship between J.D.B. and David. June admitted contacting David's employer about her sexual-abuse allegation despite the district court's directive that she support David's role in J.D.B.'s life. Furthermore, June manipulated J.D.B. to side with her over his father. David asserted June had been coaching J.D.B. to think and say negative things about David. His assertion was substantiated by both the GAL and June's former paramour, who experienced strikingly similar difficulties with June in 2010 after gaining physical care of the son they had in common. According to David, because of June's destructive behavior, J.D.B. would come to visitation anxious and fearful, and it would take some time before he and his wife would be able to "calm [J.D.B.] down, to make him feel comfortable." June's concerted efforts to sabotage J.D.B.'s bond with his father rise to the level of a substantial change in circumstances that was not contemplated at the time the court entered the decree and that relates to J.D.B.'s welfare. *See In re Marriage of Grantham*, 698 N.W.2d 140, 146 (Iowa 2005) (modifying physical care after father "maintained a persistent pattern of conduct that . . . served to diminish the children's relationship with their mother").

Moreover, we reject June's claim that because David's complaints arise out of concerns that existed at the time of the original proceedings, he has not shown a substantial change in circumstances. In the original custody decree, the district court specifically warned June her failure to foster a relationship between J.D.B. and David could result in a change of custody. *See In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993) ("If visitation rights of the noncustodial parent are jeopardized by the conduct of the custodial parent, such

acts could provide an adequate ground for a change of custody."). Yet June persisted in her campaign against David. As the district court aptly noted in the order granting David's modification request:

> [I]t was not contemplated that June's allegations of sexual abuse by David against J.D.B. would continue and cause J.D.B. to be fearful of David. It was not contemplated that these allegations would encourage June to pursue a sex abuse claim with David's employer resulting in some disruption of some visitation. June did not demonstrate any desire to move past this issue, as demonstrated at the time of the trial when she was eager to revisit her contentions . . . .

*See also In re Marriage of Downing*, 432 N.W.2d 692, 694 (Iowa Ct. App. 1988) (rejecting argument "the problems the parties face now are no different than the problems which they experienced at the time of the original decree" and finding the original decree contemplated "the parties, mature adults, overcoming these feelings to concentrate on the best interests of their daughters"). Accordingly, we find June's attempts to undermine David's relationship with J.D.B. constituted a substantial change in circumstances.

**Best Interests.** We must also consider whether David can better minister to J.D.B.'s long-term best interests. On appeal, June does not contest David's ability to provide superior care but argues uprooting J.D.B. from his home would not be in the child's best interests. Further, she contends David would not foster her relationship with J.D.B.

We agree with the district court that granting David physical care is in J.D.B.'s best interests. Throughout the modification hearing, David demonstrated his overall stability and general willingness to foster J.D.B.'s connection with June. Conversely, June consistently took steps to undermine

J.D.B.'s relationship with David—contrary to the child's best interests. *See* Iowa Code § 598.1(1) (2015). June did not appear to recognize her behavior was harmful to J.D.B., nor did she express any intent to improve her cooperation with David. Although we recognize the law's preference is for custody to remain fixed, a custodial parent's drive to alienate a child from the non-custodial parent, at a cost to the well-being of the child, can result in a transfer of physical care. *See In re Marriage of Rosenfeld*, 524 N.W.2d 212, 214–16 (Iowa Ct. App. 1994).

Accordingly, we affirm the district court's modification order.

**AFFIRMED.**