# IN THE COURT OF APPEALS OF IOWA

―――――――――

No. 25-1282
Filed May 27, 2026

―――――――――

**Brandon Michael Skaggs,**
Plaintiff–Appellant,

v.

**Kodi Jo Carson,**
Defendant–Appellee.

―――――――――

Appeal from the Iowa District Court for Linn County,
The Honorable Sean McPartland (temporary chapter 598C order) and
The Honorable Valerie L. Clay (modification order), Judges.

―――――――――

**AFFIRMED**

―――――――――

Thomas J. Viner (argued), Cedar Rapids, attorney for appellant.

Rae M. Kinkead (argued) of Simmons Perrine PLC, Cedar Rapids, attorney
for appellee.

―――――――――

Heard at oral argument
by Ahlers, P.J., and Buller and Langholz, JJ.
Opinion by Langholz, J.

**LANGHOLZ, Judge.**

Brandon Skaggs and Kodi Carson are unmarried parents of a now-six-year-old daughter. After the district court awarded joint legal custody and placed the daughter in Carson's physical care in November 2021, Skaggs petitioned to modify the custody-and-support order to place the daughter in the parents' joint physical care. While that modification petition was pending in December 2023, Carson—who has served in the Iowa National Guard since before the parties met—received orders to deploy to Kosovo for nine months. And after an expedited hearing under Iowa Code Chapter 598C (2023), the court granted Carson's request to give temporary caretaking authority to her mother during her deployment and denied Skaggs's request for temporary physical care. By the time of the January 2025 modification trial, Carson's deployment had ended. And the court denied Skaggs's modification petition because he failed to show a substantial change in circumstances warranting modification and awarded Carson attorney fees. Skaggs appeals both the temporary chapter 598C and modification orders.

Because the public-importance exception to the mootness doctrine applies, we elect to reach the merits of Skaggs's challenge to the temporary chapter 598C order even though it is now moot. And on our de novo review, we agree with the district court that section 598C.305 authorizes granting caretaking authority here because the statutory requirements were met and doing so was in the daughter's best interest. We also agree that Skaggs failed to show a substantial change in circumstances warranting a modification of the current custody order. The district court did not abuse its discretion in awarding trial attorney fees to Carson. And given the parties' respective abilities to pay and Carson's success on appeal, we also award her appellate attorney fees. We thus affirm the district court's orders.

2

## I. Background Facts and Proceedings

Skaggs and Carson had a short-term relationship while in their early twenties that resulted in the birth of a daughter in July 2019. Their relationship quickly deteriorated. And the next month, Skaggs petitioned under Iowa Code chapter 600B to establish custody, place the daughter in the parties' joint legal custody and Skaggs's physical care, and set the parties' support obligations. After a two-day trial, the district court's November 2021 order instead placed the daughter in Carson's physical care with visitation for Skaggs on alternating weekends and for three week-long periods in the summer. Skaggs appealed, and our court affirmed. *See Skaggs v. Carson*, No. 22-1075, 2022 WL 17481854, at *1 (Iowa Ct. App. Dec. 7, 2022).

Throughout this time, Carson was a member of the National Guard. Indeed, she joined when she was eighteen—long before meeting Skaggs. Because of her service, she spent much of 2022—roughly nine months— assigned to National Guard training in Texas for a new flight medic position. The daughter lived with Carson in Texas for some of that time and stayed with Carson's mother in Iowa other times, with Carson's mother transporting her back and forth for Skaggs's scheduled visitation. Conflict developed between the parties over these arrangements, and in May, Skaggs filed for contempt. But the parties ultimately reached an agreement for a modified visitation schedule and Skaggs dismissed his contempt action.

In February 2023—shortly after Carson returned from her National Guard training in Texas and the conclusion of Skaggs's appeal of the original custody-and-support order—Skaggs petitioned to modify the order, again seeking joint physical care. In September, a modification trial was scheduled for January 2025.

Things came to a head again in December 2023 when Carson received notice that she was to be deployed to Kosovo for another nine months. She was to leave—initially for Texas—later that month and would return in October 2024. Seven days after receiving her mobilization orders, Carson emailed them to Skaggs. And the parties and their lawyers tried to reach an agreement about plans for their daughter's care. Carson proposed that her mother care for the daughter in her absence along with some increased visitation for Skaggs; Skaggs proposed placing her in his physical care for the deployment. When they failed to reach an agreement, Skaggs applied for a temporary order under Iowa Code section 598C.301, placing the daughter in his physical care during the deployment. Carson resisted and argued that the court should instead grant caretaking authority to her mother under Iowa Code section 598C.305.

After an expedited hearing—at which Carson appeared remotely from Texas—the court denied Skaggs's request and granted Carson's request to give her mother temporary caretaking authority for the deployment with no other change to the visitation schedule. The court reasoned that absent chapter 598C, prior supreme court precedent "would dictate and mandate placement of the child with Mr. Skaggs during the period of Ms. Carson's deployment"—but "the provisions of the statute require the Court here to grant Ms. Carson's request that the child be placed in the temporary care of [Carson's mother] until Ms. Carson's deployment ends." The court explained that in deciding the best interest of the daughter, it looked to the statutory factors in Iowa Code section 598C.305(4). And in weighing those factors, Carson had "met her burden of establishing that the best interest of the child also favors the placement of the child with the nonparent provider [Carsons's mother]."

Skaggs unsuccessfully moved for reconsideration and then filed a notice of appeal of the district court's temporary chapter 598C order. But Carson moved to dismiss the appeal. And in April 2024, the supreme court issued an order, signed by one justice, ruling: "The court determines the challenged order is a temporary order that is not appealable as a matter of right. Treating the appellant's notice of appeal and resistance as an application for interlocutory appeal, the application is denied." Skaggs did not seek review of the single-justice order. *See* Iowa R. App. P. 6.1002(5)(b) (authorizing review of a single-justice order upon motion of a party within ten days). So the temporary chapter 598C order stayed in effect for Carson's deployment.

Carson returned from the deployment in October 2024 as expected. And then, Skaggs's underlying modification petition was tried to the court in January 2025. Carson represented herself at trial; Skaggs had an attorney.

The court denied Skaggs's request to modify the November 2021 order to place the daughter in the parties' joint physical care because he had failed to prove a "substantial change in circumstances not contemplated by the court or the parties when [the November 2021 order] was entered." The court found that the circumstances were "relatively unchanged" since the original 2021 trial. And it reasoned:

> [Carson's] deployments were not unforeseen. Occasional active duty deployments are part and parcel with service in the National Guard. In fact, the court noted in the [November 2021 order] that "when she is called into duty, the National Guard requires more time of her." The Iowa legislature enacted the Uniform Deployed Parents Custody and Visitation Act (codified in Chapter 598C) for just such circumstances.

The court also granted Carson's request for an award of $19,000 of her attorney fees—she had been represented until just before trial, switching "to

limited representation because she could not afford to keep paying for full-service legal fees."[1] Skaggs now appeals, challenging both the temporary order under Iowa Code chapter 598C and the order denying his modification petition and awarding Carson attorney fees.

## II. Temporary Caretaking Authority and Physical Care under Chapter 598C During Carson's Deployment

We start with Skaggs's challenge to the district court's temporary order under Iowa Code chapter 598C granting Carson's request to give caretaking authority to her mother during her deployment and denying Skaggs's request for physical care during that same period. Carson argues that we should not reach the merits of this challenge because her deployment is over and the order is no longer in effect, rendering the challenge moot.

As a matter of "judicial restraint," we generally "do not decide cases when the underlying controversy is moot." *Grinnell Coll. v. Osborn*, 751 N.W.2d 396, 398 (Iowa 2008) (cleaned up). A dispute is moot when our decision would have no "force or effect in the underlying controversy." *Id.* (cleaned up). But "[i]f a moot case presents a question that has public importance and is likely to recur, we may, in our discretion, still decide to settle the question." *Wallace v. Wildensee*, 990 N.W.2d 637, 642 (Iowa 2023). When deciding whether to apply this public-importance exception, we consider four factors: "(1) the private or public nature of the issue; (2) the desirability of an authoritative adjudication to guide public officials in their future conduct; (3) the likelihood of the recurrence of the issue; and (4) the likelihood the issue will recur yet evade appellate review." *Id.* (cleaned up).

---

[1] Based on the parties' updated child-support-guideline worksheets, the court also modified Skaggs's child-support obligation. Skaggs does not challenge that modification.

We agree with Carson that because the challenged order is no longer in effect, the parties' dispute over that order is moot. *See Bartsch v. Bartsch*, 636 N.W.2d 3, 10 (Iowa 2001) (holding that challenge to temporary order in domestic-abuse proceeding was moot after it became ineffective); *In re Marriage of Curtis*, No. 06-1392, 2007 WL 1201758, at \*2 (Iowa Ct. App. Apr. 25, 2007) (holding that dispute over court's jurisdiction to issue a temporary order modifying visitation-provision of decree was moot after order was no longer in effect).

But even so, all four factors support applying the public-importance exception. First, the scope of the court's authority to temporarily place a child of a deployed servicemember with a nonparent rather than a parent is a public issue that affects more than just these two private parties. *See Wallace*, 990 N.W.2d at 642 (reasoning that "questions about state domestic relations law" were "public"). Second, no appellate court has yet had the chance to interpret chapter 598C since its enactment in 2016, so providing the district courts guidance on the issue is desirable—especially given the expedited timelines under which the courts are required to apply the statute. *See id.* at 642–43 (relying on "desirability for authoritative adjudication to guide district courts so the law is applied uniformly."). Third, while the issue is not routine, it is likely to arise again given the number of dissolution and custody proceedings and the regular deployments of members of the National Guard or other uniformed services in the State. And fourth, because of the temporary nature of these orders and the need for expedited resolution, the issue is likely to continue to evade appellate review. *Cf. Iowa Dep't of Health & Hum. Servs. v. Iowa Dist. Ct.*, 27 N.W.3d 76, 82 (Iowa 2026) (applying the exception to reach a temporary order "due to the expedited nature of child welfare proceedings"). We thus exercise our discretion to reach the merits under the public-importance exception.

Skaggs argues that the court erred in granting caretaking authority to Carson's mother under chapter 598C rather than to him for the duration of Carson's deployment. According to Skaggs, "under 598C a parent cannot pass over the non-custodial parent in the custodial parent's absence (deployment)." And he contends "the Court did not place the child according to the Child's best interests." Carson counters that chapter 598C expressly authorizes a delegation of caretaking authority to a nonparent even when there is a fit nondeployed parent, so long as the delegation is in the child's best interest. And Carson defends the court's decision here because the record shows that delegation to Carson's mother was in the daughter's best interest. To resolve the dispute, we start with the text of chapter 598C.

Enacted in 2016, Iowa Code chapter 598C is Iowa's version of the Uniform Deployed Parents Custody and Visitation Act. *See* Iowa Code § 598C.101; 2016 Iowa Acts ch. 1084; *see generally* Mark E. Sullivan et al., *The Uniform Deployed Parents Custody and Visitation Act*, 27 J. Am. Acad. Matrim. Law. 391 (2015). Replacing narrower Iowa-specific statutes,[2] the Act "addresses issues of child custody and visitation that arise when parents are deployed in military or other service . . . to ensure that parents who serve their country are not penalized for their service while still giving adequate weight to the interests of the other parent, and, most importantly, the best interest of the child." Uniform Deployed Parents Custody and Visitation Act [hereinafter "UDPCVA"], Prefatory Note. And we are directed that the chapter "shall be applied and construed with consideration given to the need to promote uniformity of the law with respect to its subject matter among states that enact" the Act. Iowa Code § 598C.501.

---

[2] *See* Iowa Code §§ 598.41C, .41D (2016); 2016 Iowa Acts ch. 1084, § 30; *see also In re Trotter*, No. 12-0902, 2013 WL 541423, at *2–4 (Iowa Ct. App. Feb. 13, 2013).

The parties' dispute centers on Iowa Code section 598C.305,[3] which provides in part:

> On motion of a deploying parent and in accordance with a law of this state other than this chapter, if it is in the best interest of the child, a court may grant caretaking authority to a nonparent who is an adult family member of the child or an adult with whom the child has a close and substantial relationship.

Iowa Code § 598C.305(1). Section 598C.305 continues on—enacting text that is not included in the Uniform Act—to require that "[i]n determining the best interest of the child, the court shall ensure all of the following." *Id.* § 598C.305(4). And it then lists five requirements for the specified nonparent: (1) not being "a sex offender"; (2) not having "a history of domestic abuse"; (3) not having "a record of founded child or dependent adult abuse"; (4) having "a close and substantial relationship with the child" such that granting the authority "will provide the child the opportunity to maintain an ongoing relationship that is important to the child"; and (5) demonstrating "an ability to personally and financially support the child" and to "support the child's relationship with both of the child's parents during the grant of caretaking authority or decision-making authority." *Id.* § 598C.305(4)(a)–(e).[4]

---

[3] While chapter 598C generally mirrors the section numbers of the Uniform Act, Iowa Code section 598C.305 enacts a version of section 306 of the Uniform Act because chapter 598C omits the Uniform Act's section 301, providing a definition that chapter 598C puts with the other general definitions in Iowa Code section 598.102, and renumbers the Uniform Act's sections 302 through 311 accordingly. *Compare* Iowa Code § 598C.305, *with* UDPCVA § 306; *compare also* UDPCVA § 301, *with* Iowa Code § 598C.102(4).

[4] This added set of mandatory requirements is nearly identical to provisions that were included in the earlier statute addressing the assignment of parenting time during a parent's active-duty military service. *See* Iowa Code § 598.41D(4)(b) (2016).

The "caretaking authority" that the statute authorizes the court to grant is the generic term used in the Uniform Act to cover "the right to live with and care for a child on a day-to-day basis," including "physical custody, parenting time, right to access, and visitation." *Id.* § 598C.102(2). It thus includes what our statutes and cases would typically call "physical care."[5] *See id.* § 598.1(7). Where, as here, a prior permanent custody order has been entered, the caretaking authority granted cannot be more than "[t]he amount of time granted to the deploying parent" under that order "but the court may add unusual travel time necessary to transport the child" and the nondeployed parent may agree to a greater amount. *Id.* § 598C.305(2)(a). And any grant of caretaking authority "is temporary" and automatically terminates sixty days after the deploying parent gives notice that he or she has returned from deployment unless the court otherwise terminates it. *Id.* § 598C.307(1); *see also id.* §§ 598C.402, .404.

Skaggs does not argue that Carson failed to show that her mother meets any of the specific statutory requirements that the district court had "to ensure" were met "[i]n determining the best interest of the child." *Id.* § 598C.305(4). Rather, he argues that the daughter's best interest more generally required the court to place her in his physical care rather than with Carson's mother.

Skaggs is correct that a district court's best-interest analysis under section 598C.305 must involve more than merely ensuring the mandatory requirements for the nonparent are satisfied. The statute authorizes the grant of caretaking authority only "if it is in the best interest of the child" and "in

---

[5] Section 598C.305 also includes a provision authorizing the court to "grant part of a deploying parent's decision-making authority"—or in our normal terminology, "legal custody"—to a nonparent. Iowa Code § 598C.305(3). That provision is not at issue here.

accordance with a law of this state other than this chapter." *Id.* § 598C.305(1). That text sweeps in our normal best-interest-of-the-child standard that always governs physical-care decisions. *See* UDPCVA § 306 cmt. (noting that the "requirement that a grant of custodial responsibility be 'in accordance with law of this state other than this [act]' is also intended to incorporate other relevant custody law in the state"). And nothing in the later directive that certain requirements—that the nonparent not be a sex offender and the like—must be satisfied, implies that if they are, the request must be granted. After all, the statute is written as a discretionary grant of authority that "a court *may* grant caretaking authority"—not that it shall. *Id.* § 598C.305(1).

So as with physical-care decisions outside of chapter 598C, in deciding whether a grant of caretaking authority to a nonparent who meets the mandatory requirements of section 598C.305(4) is in the child's best interest, we are guided by the factors in Iowa Code section 598.41(3) and those identified by our supreme court in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). Our goal "is to place the child[] in the environment most likely to bring [her] to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). And we remain focused not on the "perceived fairness to" the *parents* but on "what is best for the *child*." *Id.*

Mindful of this guidance, on our de novo review we agree with the district court's conclusion that granting caretaking authority to Carson's mother rather than placing the daughter in Skaggs's physical care was in the daughter's best interest. At the time of the court's decision, the then-five-year-old daughter had already spent a significant portion of her life with Carson's mother, living in her home with Carson for the daughter's first two

years of life and being in her care during much of the nine months of Carson's training in Texas. Carson's mother also lived in a nearby town allowing the daughter to continue in her longtime daycare and her same preschool. Skaggs, on the other hand, had never been the daughter's primary caretaker. He lived roughly an hour away. And placing the daughter in his care would have required disruption of her daycare, school, and all the corresponding relationships. We think the interests of stability, continuity, and supporting the daughter's existing relationships are especially important in this context of a limited temporary order. So even though Skaggs is the child's father, the child's best interests were served by granting caretaking authority to Carson's mother for the deployment period because it maintained the status quo rather than uprooting the daughter's life for nine months.

In arguing otherwise, Skaggs mainly contends that he "should not come second to his child's maternal grandmother." And his position is not without support in Iowa precedent decided before chapter 598C was enacted. *See In re Marriage of Grantham*, 698 N.W.2d 140, 145 (Iowa 2005) (reasoning that nondeployed parent's "claim to temporary custody was clearly superior to that of [the deploying parent's] mother" and concluding "[t]hat she would receive temporary custody on an application to the court was an almost certain occurrence" after deploying parent left the children with his mother). But the enactment of chapter 598C trumps that common-law precedent. Section 598C.305 expressly authorizes granting caretaking time to a nonparent even when there is another fit parent. There is no basis in its text to adopt Skaggs's interpretation that "a parent cannot pass over the non-custodial parent." To the contrary, its entire statutory scheme is premised on giving a parent the chance to do so if it is in the child's best interest. Skaggs's interpretation would render that scheme meaningless.

To be sure, there may well be times when it will be in a child's best interest to be placed in the physical care of the nondeployed parent rather than granting caretaking authority to a nonparent. As the comments to the Uniform Act explain, section 598C.305 "establishes no presumption for a grant of custodial responsibility between such a nonparent and the child's other parent"—that decision must be made "based on the best interest of the child." UDPCVA § 306 cmt. But here, we agree with the district court that granting caretaking authority to Carson's mother during the deployment was in the daughter's best interest.

We thus affirm the district court's temporary order under Iowa Code chapter 598C granting Carson's request to give caretaking authority to her mother during her deployment and denying Skaggs's request for physical care during that same period.[6]

---

[6] Skaggs also asks us to revisit the supreme court's ruling in its April 2024 order that the district court's chapter 598C order was "not appealable as a matter of right." He argues that the chapter 598C order was a final order rather than an interlocutory order and thus should have been appealable under Iowa Rule of Appellate Procedure 6.103(1). *Contrast In re Marriage of Prybil*, 230 N.W.2d 487, 488 (Iowa 1975) (holding that temporary alimony order issued before dissolution decree was final for purposes of appeal), *with In re Marriage of Denly*, 590 N.W.2d 48, 51 (Iowa 1999) (holding that "[t]emporary custody orders are not final judgments appealable as a matter of right, but rather are interlocutory orders"). But Carson is correct—at least under these specific circumstances—that the supreme court's ruling is law of the case and thus binding on us. *See State v. Ragland*, 812 N.W.2d 654, 658 (Iowa 2012) ("[A]n appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case." (cleaned up)). Indeed, the law-of-the-case doctrine protects Skaggs from the unfairness that would result if we were to hold that the order was final rather than interlocutory because if it were, we could not review his challenge to the order since he filed this appeal more than thirty days after that order. *See* Iowa R. App. P. 6.101(1); *Prybil*, 230 N.W.2d at 488 (holding that temporary alimony order was unreviewable on appeal from the later dissolution decree).

### III. Modification of Permanent Physical-Care Placement

Skaggs next challenges the district court's denial of his petition to modify the custody-and-support order to place the daughter in their joint physical care rather than in Carson's physical care. We review a district court's modification decision under chapter 600B de novo. *Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020). And we apply the same standards for modification of a physical-care placement set in an order under chapter 600B as we do for one set in a dissolution decree. *See* Iowa Code § 600B.40(2) (providing that Iowa Code section 598.41 "shall apply" when determining the visitation or custody arrangements" under the chapter); *Thorpe*, 949 N.W.2d at 5.

Once physical care of a child has been set by the court, "it should be disturbed only for the most cogent reasons." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). And so, a parent seeking to modify a physical-care provision bears a "heavy burden." *Id.* The parent must show "by a preponderance of evidence that conditions since the [the original order] was entered have so materially and substantially changed that the [child's] best interest[] make[s] it expedient to make the requested change." *Id.* And to qualify, "[t]he changed circumstances must not have been contemplated by the court when the [original order] was entered," "they must be more or less permanent, not temporary," and "must relate to the welfare of the children." *Id.*

The district court denied Skaggs's modification request because he failed to meet this burden to prove a substantial change in circumstances warranting modification. Skaggs argues that this was error, pointing to Carson's National Guard service outside of Iowa "for 18 months in the previous 4 years" as "a huge change not contemplated." But on our de novo

14

review, we agree with the district court that neither Carson's nine-month deployment to Kosovo nor her nine months of training in Texas rise to the level of a change in circumstances warranting modification for at least two reasons.

First, the possibility of future deployments was contemplated by the court at the time of the original order in 2021. *See id.* Carson was already serving in the National Guard. And the court order noted that while her service normally required "a weekend a month and a couple weeks a summer from her," "when [she] is called into duty, the National Guard requires more of her time." What's more, during cross-examination at the modification hearing, Skaggs agreed that "being in the military, it is fair to be expectant of additional trainings, annual trainings, [and] deployments."

Second, these circumstances were not "more or less permanent." *Id.* Both the Texas training and the Kosovo deployment were temporary—each about nine months. By the time of the modification hearing, Carson was no longer deployed. And so, Skaggs cannot rely on the training and deployment as grounds for a permanent modification.[7]

Skaggs points to no other grounds in the record for finding a material and substantial change of circumstances warranting modification of the

---

[7] For the first time on appeal, Carson also point us to another provision of Iowa's version of the Uniform Deployed Parents Custody and Visitation Act that provides: "In a proceeding for custodial responsibility of a child of a service member, a court shall not consider a parent's past deployment or probable future deployment in general in determining the best interest of the child." Iowa Code § 598C.107; *see also id.* § 598C.102(9) (defining deployment under the Act). Because this provision was not raised to—or addressed by—the district court, we do not decide whether it would provide another reason that Carson's Texas training, Kosovo deployment, or both had to be disregarded in deciding whether to modify the daughter's physical-care placement.

daughter's physical-care placement. He thus failed to carry his heavy burden, and we affirm the district court's denial of his request to modify the physical-care provision of the November 2021 order.

## IV.    Trial and Appellate Attorney Fees

Finally, Skaggs appeals the district court's award of $19,000 in trial attorney fees to Carson. And Carson asks that we award her some amount of her appellate attorney fees.

The district court has discretion whether to award the prevailing party attorney fees in a chapter 600B modification proceeding. *See* Iowa Code § 600B.26 ("In a proceeding . . . to modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees."). In exercising that discretion, the court must consider the parties' respective abilities to pay. *See Markey v. Carney*, 705 N.W.2d 13, 26 (Iowa 2005). We review the district court's decision whether to award fees for abuse of discretion. *See id.* at 25. We also have discretion to award appellate attorney fees to the prevailing party. *See id.* at 26. And we similarly consider "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *Id.* (cleaned up).

We see no abuse of discretion in the district court's attorney-fee award. Carson was the prevailing party. Skaggs has a much greater ability to pay—with more than double Carson's income and no mortgage or rent expenses. On appeal for the first time, Skaggs contends the court overlooked the effect of his own legal expenses on his ability to pay. But this argument fails because he did not present evidence of his attorney fees in the district court. We thus affirm the district court's attorney-fee award.

We also agree that an award of appellate attorney fees to Carson is appropriate. Carson prevailed in this appeal after having to defend the district court's decision. Skaggs still has a greater ability to pay than Carson. And Carson has helpfully submitted attorney-fee affidavits showing that an award of $8,000 of her appellate attorney fees is reasonable. *See In re Marriage of Samuels da Fonseca Silva*, 15 N.W.3d 801, 808–09 (Iowa Ct. App. 2024) (noting our preference that parties submit attorney-fee affidavit that provides "an itemization of the attorney's time expended, tasks performed, and hourly rate that provides sufficient detail for us to exercise our discretion in deciding a reasonable fee award" on appeal without remand). We thus award Carson $8,000 in appellate attorney fees.

**AFFIRMED.**