**In re the MARRIAGE OF Dennie Lloyd BOLIN and Monna Lea Bolin.**

**Upon the Petition of Dennie Lloyd Bolin, Appellee,**

**And Concerning Monna Lea Bolin, Appellant.**

No. 69556.

Supreme Court of Iowa.

July 20, 1983.

Ione G. Shadduck, West Des Moines, for appellant.

Patrick J. Life of Patrick J. Life, P.C., Oskaloosa, for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, SCHULTZ, CARTER and WOLLE, JJ.

McCORMICK, Justice.

This appeal presents a problem concerning joint custody. Petitioner Dennie Lloyd Bolin (Dennie) and Monna Lea Bolin (Molly) were awarded joint custody of their son Damien, born January 4, 1977, in a dissolution decree entered February 16, 1982. Subsequently, however, they could not agree on which of them would have physical care of the child during the ensuing school year. On September 14, 1982, Dennie filed an application for modification of the decree to give him sole custody. The trial court granted the application and Molly appealed. We reverse and remand.

I. *Joint custody.* When the decree was entered in the present case, statutory authority existed for an award of joint custody. Iowa Code § 598.21(6) (1981) ("The court may provide for joint custody of the children by the parties."). As with other orders entered pursuant to section 598.21, the court was authorized to modify a joint custody award "when there is a substantial change in circumstances." § 598.21(8). Effective July 1, 1982, section 598.21(6) was changed to make joint custody awards subject to various statutory guidelines now

codified in section 598.41. *See* 69th G.A. ch. 1250 (1982); Iowa Code §§ 598.21(6) and 598.41 (1983). Modification must still be predicated, however, on a substantial change of circumstances. *See* Iowa Code § 598.21(8) (1983).

 Before a change in custody may be made, the party seeking modification must establish by a preponderance of evidence "that conditions since the court decree have so materially and substantially changed that the children's best interests make it expedient to award their custody to him." *Hobson v. Hobson,* 248 N.W.2d 137, 139 (Iowa 1976). The changed circumstances must not have been within the contemplation of the court when the decree was entered. *Id.* The change must be more or less permanent, not temporary, and must relate to the welfare of the children. *Id.* at 140.

Even though the 1982 amendment did not control the award of joint custody in this case, it delineates factors to be considered by a court in determining whether sole or joint custody should be awarded. *See* § 598.41(3). We believe those factors provide a useful benchmark for comparing circumstances at the time of the decree with circumstances at the time of the modification hearing. The factors are:

a. Whether each parent would be a suitable custodian for the child.

b. Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.

c. Whether the parents can communicate with each other regarding the child's needs.

d. Whether both parents have actively cared for the child before and since the separation.

e. Whether each parent can support the other parent's relationship with the child.

f. Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition,

taking into consideration the child's age and maturity.

g. Whether one or both the parents agree or are opposed to joint custody.

h. The geographic proximity of the parents.

The 1982 amendment is also relevant in two other respects. One is that it contains definitions of joint custody and physical care. *See* § 598.1(4) and (5). The other is that it provides that joint custody does not require joint physical care. *See* § 598.41(4).

Section 598.1(4) provides:

"*Joint custody*" or "*joint legal custody*" means an award of custody of a minor child to both parents under which both parents have rights and responsibilities toward the child and under which neither parent has rights superior to those of the other parent. The court may award physical care to one parent only.

Physical care is defined in section 598.1(5) as follows:

"*Physical care*" means the right and responsibility to maintain the principal home of the minor child and provide for the routine care of the child.

Section 598.41(4) provides:

Joint legal custody does not require joint physical care. When the court determines such action would be in the child's best interest, physical care may be given to one joint custodial parent and not to the other. However, physical care given to one parent does not affect the other parent's rights and responsibilities as a legal custodian of the child.

Before the 1982 amendment the statute did not define joint custody. In attempting to determine the meaning of the term in *In re Marriage of Burham,* 283 N.W.2d 269, 271–72 (Iowa 1979), this court noted the difference of viewpoint among commentators concerning whether joint custody means "divided custody." The court decided to treat the concepts as synonymous "because in each custody arrangement, regardless of the label it is given, both parents share in the legal responsibility for care and alternate in custodial companion-

ship. And each such custody arrangement when contested . . . must withstand scrutiny on its terms and conditions." *Id.* at 272. The 1982 amendment shows, however, that joint custody does not require alternating custodial companionship. Joint custody is not synonymous with what this court previously labeled "divided custody." *See McCrery v. McCrery,* 258 Iowa 354, 138 N.W.2d 876 (1965). In light of the uncertainty of meaning noted in *Burham,* we believe the General Assembly added the 1982 definitions to clarify rather than to change the meaning of the statute. *See Barnett v. Durant Community School District,* 249 N.W.2d 626, 629 (Iowa 1977). In this case we therefore give the term joint custody its present statutory meaning.

In our de novo review we have compared the relevant circumstances existing or within the contemplation of the court at the time of the decree with those existing eight months later when the modification hearing was held.

We first recite our findings of fact and then our conclusions from them.

Dennie and Molly grew up in Moravia. They were married in 1976 when he was 21 and she was 18. Dennie worked on construction jobs while Molly attended Grandview College on a basketball scholarship. After Damien was born Molly stayed out of basketball for a year to care for him. When she resumed that activity, the parties shared responsibility for his care. After three years of college Molly signed a contract to play professional basketball with the Des Moines Cornets. She played with the Cornets for two years until the team disbanded. Because Dennie's work was seasonal, he was often available to take care of Damien while Molly was occupied with basketball.

In October 1980 Molly was offered a position with a team in the Los Angeles area, and the parties moved there. After approximately three months that team also disbanded because of financial difficulties, but she obtained a contract with a San Francisco team which promised to help Dennie find a job in that area. Molly played with the San Francisco team for the remainder of the season. She supported the family throughout the period they were in California. Dennie was unable to find satisfactory work and returned to Iowa with Damien shortly before the season ended in the spring of 1981.

Dennie and Damien moved in with Dennie's parents in Moravia, and Molly subsequently joined them there. Marital problems that had been building for many months then reached the point where the parties agreed the marriage should be terminated. After discussion with Dennie's attorney they also agreed they should have joint custody of Damien. Dennie filed a dissolution petition in June 1981, and the parties entered a stipulation including a provision for joint custody in July. The stipulation was silent concerning Damien's physical care.

Molly decided to go to southern California to look for work and to establish a home for Damien. She agreed to leave Damien with Dennie until Labor Day at which time she would return to Iowa to take him back to California with her. When she returned, Dennie misled her into believing he had an order allowing her to take Damien to California for only two weeks. She returned him to Iowa at the end of that period. She traveled to Iowa in January 1982 to take Damien back with her. Dennie persuaded her to leave Damien in his care until after his wedding to another woman which was to occur later that month, as soon as the dissolution decree was obtained. The decree was not entered, however, until February and the wedding occurred on February 20, 1982.

At the time the decree was entered, Molly lived in Brea, California, in a rented condominium. She had fulltime employment with a remodeling and decorating company. Dennie finally allowed Damien to be taken to California in March 1982. Molly had his care for the following four months. She discovered upon his arrival that he had serious dental problems that required attention. She obtained the necessary services which included surgery be-

cause one tooth was abscessed. She also discovered an eye problem for which she arranged care. Damien was enrolled in summer camp and pre-school. Molly kept Dennie and his parents informed of Damien's progress, and they were permitted to call him whenever they wished.

Molly employed an attorney in an effort to obtain agreement on Damien's physical care. Dennie did not then have an attorney and did not respond to efforts to discuss the issue. Molly agreed he could have Damien for two weeks in August before school started. She received a call from a Centerville police officer advising her of a report that Dennie was going to "kidnap" Damien from school. She removed him from pre-school as a precaution.

Dennie arrived in California two days before he was scheduled to do so. Instead of contacting Molly he went to Damien's school looking for him. When he subsequently contacted Molly, she agreed to allow him to take Damien only if he would sign an agreement promising to return him by September 15, 1982. Dennie signed the document and returned to Iowa with Damien. Then, contrary to the agreement, he enrolled Damien in school in Moravia. In the meantime, relying on continuous assurances by Dennie that he would abide by the agreement, Molly arranged for Damien to enter school in California.

When Molly flew to Iowa to get Damien, Dennie secreted the child, filed his application to modify the decree, and obtained an ex parte injunction restraining Molly from taking the child. Molly filed a motion to dissolve the injunction and, after hearing, the court continued it upon bond to be filed by Dennie, pending the modification hearing which was scheduled for and held in October 1982.

Upon the record of these events, we must determine whether the trial court erred in finding that Dennie met his burden to establish that the decree should be modified to award Damien's sole custody to him. We consider whether the evidence shows changes affecting the factors in section 598.41(3) in deciding that issue.

(a) *Whether each parent would be a suitable custodian for the child.* Nothing occurred subsequent to the entry of the decree to reflect adversely on Molly's suitability as a joint custodian. Rather the record shows she has maintained a mature, patient and loving concern for Damien's welfare. Her attitude and conduct in attempting to work out the custody problem within the law have been commendable.

(b) *Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.* Experts and other witnesses made it clear Damien needs and should have contact with and attention from both parents. Nothing has occurred since entry of the decree to diminish this need.

(c) *Whether the parents can communicate with each other regarding the child's needs.* The parents have proved a capacity to communicate regarding Damien's needs. Their dispute concerning who should have Damien's primary physical care is not a change in communicative capacity.

(d) *Whether both parents have actively cared for the child before and since the separation.* Nothing has changed since the decree regarding the parties' interests in providing Damien with active care.

(e) *Whether each parent can support the other parent's relationship with the child.* The record shows Molly has gone "the extra mile" to support Dennie's relationship with Damien. Unfortunately Dennie, with some help from his family, has tried to achieve a de facto victory in the dispute over physical care by alienating Damien from his mother. Molly's right as joint custodian, however, should not be defeated on this basis. Dennie's conduct reflects adversely on his custodial ability, but we are hopeful he will recognize Damien's best interests require positive support of the child's relationship with Molly.

(f) *Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity.*

Damien obviously desires to maintain a close relationship with each parent. This situation has not changed since the decree was entered.

■■■ (g) *Whether one or both the parents agree or are opposed to joint custody.* Dennie now opposes joint custody even though he agreed to it when the decree was entered. Agreement is merely one factor to be considered when joint custody is ordered, and a change of heart by one or even both parties is not by itself sufficient to establish a change of circumstances requiring joint custody to be terminated. The views of the parties are important but do not control the court's initial custody decision or its determination of a modification application.

■■ Although Molly sought modification to award sole custody to her as an alternative position in the trial court and in oral argument in this court, she has also consistently expressed a willingness to have joint custody continued. Dennie's opposition is based on his desire for Damien's physical care rather than on any grounds relating to Molly's ability to share parental legal rights and responsibilities. He has simply not given joint custody an opportunity to work. We do not believe that a parent who prevents joint custody from working makes a very good showing of fitness for sole custody. When one parent's obduracy makes joint custody unworkable, the trial court in a modification proceeding may find the child's best interests require sole custody in the other parent. Because we find an insufficient basis for changing the custody award, we need not reach that issue in the present case. Nor do we address the problem of Molly's failure in her appellate brief to repeat her trial court request for sole custody.

(h) *The geographic proximity of the parents.* The parties had the same geographic separation when the decree was entered as when the modification hearing was held. No change of circumstances can be predicated on this factor. Moreover, geographic proximity is only one of the factors bearing on the custody award. Although this factor may negatively affect the practicability of joint custody in a given case, it bears more directly on the issues of physical care and visitation than on parental sharing of legal rights and responsibilities.

The trial court did not specifically address any of these factors. Instead the court found a change of circumstances in what it characterized as an absence of "communication, agreement, cordiality and any hint of friendliness and cooperation between petitioner and respondent...." Aside from the fact the record does not show any material difference between the circumstances when the decree was entered and the later circumstances, we believe the problem between the parties was not the issue of joint custody but physical care. Their failure to have an agreement on that issue at the time of the decree inevitably contributed to the subsequent problem.

By definition, joint custody involves equality in legal rights and responsibilities of the parents toward their child. § 598.1(4). Physical care involves their relative rights and responsibilities to maintain the principal home and provide for the routine care of the child. § 598.1(5). These are separate issues. § 598.41(4). An award of joint custody does not answer the question of where the child will live. This question is at the root of the dispute in the present case.

■■ Although cooperation and communication are essential in joint custody, tension between the parents is not alone sufficient to demonstrate it will not work. Dissolution of the marriage demonstrates that the relationship between the parties has broken down. The legislature, however, requires a custody award, "insofar as reasonable and in the best interest of the child, ..., including liberal visitation rights where appropriate, which will assure a minor child frequent and continuing contact with both parents after the parties have separated or dissolved the marriage and which will encourage parents to share the rights and responsibilities of raising the child." § 598.41(1). Joint custody is intended to

foster that objective, leaving each parent with the "rights and responsibilities associated with parenthood in lieu of reducing a non-custodial parent's role to that of a favorite, visiting relative." *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa App. 1981) (Johnson, J., concurring). This is because the child needs and deserves the help of both parents and not because of joint custody's effect on parental self-esteem.

Even though the parents are not required to be friends, they owe it to the child to maintain an attitude of civility, act decently toward one another, and communicate openly with each other. One might well question the suitability as custodian of any parent unable to meet these minimum requirements. Problems are likely to develop under any custodial arrangement. The adults must have the maturity to put their personal antagonisms aside and attempt to resolve the problems. The existence of problems does not in itself justify a change in custody.

█ Now that the statute has been clarified, no excuse exists for misunderstanding of the meaning and consequences of an award of joint custody. Lawyers must carefully explain the concept to their clients and attempt, insofar as feasible, to anticipate and guard against the kind of problem that arose in this case. Trial courts similarly have a duty to satisfy themselves that the parties, even in a default proceeding to the extent possible, have a clear understanding of their custodial rights and responsibilities. A failure to address the issue of physical care in the decree may well merely postpone a serious problem. Like custody, the related status of physical care should be quickly fixed and little disturbed.

█ Dennie did not meet his burden to prove joint custody should be terminated in this case. The trial court erred in holding otherwise.

II. *Physical care.* After modifying the decree to award Dennie sole custody of Damien, the trial court decided the issue of visitation. Essentially the court provided that Dennie was to have Damien's care except for visitation with Molly in California from the third full week in June until the third full week in August each year and additional visitations at reasonable times and places when Molly visits Iowa. Because we reverse the modification order, Damien is to remain in the joint custody of the parties. The issue of physical care, however, must be resolved.

█ We believe Molly established by a preponderance of the evidence that Damien's best interests will be served if she has Damien's physical care during the school year. She is able to provide him with a pleasant home in a nice community. She has demonstrated a willingness to provide him with personal attention and necessary dental and medical care. Her employment is sufficiently flexible to permit her to spend extra time with Damien. Moreover, she has demonstrated an ability to put her personal feelings aside to permit Damien to continue his relationship with Dennie and Dennie's family. She offers Damien a wholesome and loving home. We conclude that the trial court's order should be modified to award Molly physical care of Damien except as follows:

1. Dennie shall have his physical care from the commencement of the third week in June to the commencement of the third week in August each year, starting in June 1984.

2. Dennie shall have visitation rights with Damien, alternating each year, over Christmas vacation or spring vacation, commencing with Christmas 1983.

3. In addition, Dennie shall have visitation rights with Damien at reasonable times and places in California and during other visits by Damien to Iowa.

In modifying the decree, the trial court ordered Molly to pay Dennie $25 per week child support except during the period of Damien's summer visitation. The court ordered Dennie to pay $25 per week child support during that period. These provisions should be changed to require Dennie to pay $25 per week child support except during the period of Damien's summer visi-

tation with him. Molly shall pay $25 per week child support to Dennie during that period. This requirement implements the parties' pre-decree stipulation that they should contribute equally to Damien's support. The payments are to be made in the same way and to have the same duration as provided in the trial court's order.

In addition, the parties shall each pay one-half of the expense of Damien's transportation to and from Iowa for scheduled visitations with Dennie.

III. *Other issues.* This disposition makes certain of Molly's contentions on appeal moot. We briefly address her remaining contentions.

She contends the trial court (through a different judge) erred in entering the temporary injunction in September 1982. The present trial court's modification order mooted this issue. It did not, however, meet Molly's allegation that she was entitled in the modification proceeding to an award of expenses based on a condition imposed by the former trial court in permitting the temporary injunction to be continued in its ruling of September 17, 1982. The ruling provided:

> The court finds that the temporary injunction previously issued shall be quashed out and set aside, unless the petitioner shall, on this date, file with the Clerk of this Court, a cash or surety bond in the penal sum of $2500.00, fully secured, to [guarantee] the payment to Respondent the cost of returning to Iowa, and her loss of wages and prior school fees, incurred by Respondent in returning to Iowa, all of which will be determined at the time of hearing on the Petitioner's Application to Modify Decree of Dissolution of Marriage.

The court failed to rule on this issue in the modification proceeding. Limited remand was ordered during the appeal to permit the court to rule on a motion by Molly to obtain a determination of the issue. The trial court overruled the motion. Molly introduced evidence of the relevant expenses in the modification proceeding. Upon remand from the present decision the trial court shall award her such of the expenses identified in the order of September 17, 1982, as it finds have been established by a preponderance of evidence.

Molly asserts she was entitled to attorney fees in the trial court and requests attorney fees on appeal. No authority exists for an award of attorney fees in modification proceedings. *See In re Marriage of Havener,* 240 N.W.2d 670, 671 (Iowa 1976). Molly also asserts the trial court erred in failing to initiate perjury charges against Dennie based on alleged admitted lies under oath. Without intimating any view on the merits of her complaint, we note that it is not a cognizable ground for relief on appeal from the modification order.

We have considered all of the arguments of each party, whether specifically addressed in this opinion or not, and except to the extent recognized in the opinion we find them to be without merit.

We reverse and remand. Upon remand the trial court shall enter an amended decree in conformance with this opinion.

REVERSED AND REMANDED.