# IN THE COURT OF APPEALS OF IOWA

No. 16-0933
Filed February 22, 2017

IN RE THE MARRIAGE OF MELISSA SUTTON
AND PATRICK SUTTON

Upon the Petition of
**MELISSA SUTTON,**
        Petitioner-Appellee,

**And Concerning
PATRICK SUTTON,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Woodbury County, Duane E.

Hoffmeyer, Judge.


        The former husband appeals from the district court's second modification

of the dissolution decree. **AFFIRMED.**


        Zachary S. Hindman of Mayne, Arneson, Hindman, Hisey & Daane, Sioux

City, for appellant.

        Tara S. Vonnahme of Vonnahme Law, P.C., Sioux City, for appellee.


        Considered by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

Patrick Sutton appeals from the district court's second modification of the parties' dissolution decree. On appeal, Patrick maintains the district court should have granted his petition to modify physical care so he and his former wife, Melissa Sutton, share joint physical care of their minor child, S.M.S. Additionally, he maintains the district court should have denied Melissa's request that she be given sole legal custody of S.M.S. and should not have required him to pay $4000 of Melissa's attorney fees.

**I. Background Facts and Proceedings.**

Melissa filed a petition for dissolution in June 2011. The marriage was dissolved by decree approximately one year later. At the time, the parties had three minor children—fifteen-year-old twins and an eight-year old daughter, S.M.S. At the dissolution hearing, the twins expressed a preference to live with their father. The court noted that the twins and Melissa had a strained relationship and found Melissa was at least partially responsible for the strain. However, the court also stated, "Patrick's support of Melissa's role as the children's mother must improve." The court awarded the parties joint legal custody, and Patrick was given physical care of all three minor children.

Melissa filed a petition for modification in September 2013. In it, she maintained she had been denied visitation with the twins since August 2012. Additionally, she claimed she had asked Patrick to attend co-parenting therapy, but he had never responded to her request. Melissa asked the court to modify

physical care of S.M.S. to place her in Melissa's care.[1]   Patrick filed a counterclaim maintaining that the twin's therapist had "recommended no visitation" until Melissa attended joint counseling with the twins.   He asked the court to modify visitation "to include visitation only in supervised therapeutic counseling setting."

In July 2014, the court entered its first modification.   In it, the court noted the decree's statement that Patrick's support of Melissa as a parent must improve and found "emphatically" that it had not.   The court continued, "Patrick is one of the worst joint custodians this court has ever seen.   Patrick's actions suggest he would rather ignore Melissa and her involvement hoping she will just go away.   Patrick, when testifying, comes across as angry and vengeful." Additionally, the court noted,

> S.M.S., prior to the divorce, was described as an energetic, outgoing young lady.   Today she is someone who is struggling leaving the home for visitation, has few, if any, friends, does not appear to be close to her older sisters, and the most important thing in her life is her dog.   Patrick has slept [in the same bed] with S.M.S. and while he describes it differently, all counselors testified this behavior was inappropriate, yet he continued to do so.   The fact she attends school and lives in a different school district does not facilitate the development of other childhood friendships. . . . The evidence of S.M.S.'s overall behavior prior to the divorce and presently is strikingly different.   Continuity and stability have not served her well.

While the parties continued to share legal custody of S.M.S., the court placed her in Melissa's physical care.

Patrick appealed the ruling, and in May 2015, a panel of our court affirmed the modification.   *See In re Marriage of Sutton*, No. 14-1408, 2015 WL 3369139,

---

[1]  Melissa did not ask the court to modify physical care of the twins.

at *3 (Iowa Ct. App. May 20, 2015). Our supreme court denied Patrick's request for further review, and procedendo issued on July 10, 2015.

Less than two months later, Patrick filed a petition for another modification. In it, he claimed Melissa had restricted communications between S.M.S. and her father and sisters. He asked the court to grant him and Melissa joint physical care of S.M.S. Melissa then filed a counterclaim asking the court to award her attorney fees. By agreement of the parties, the court was also asked to consider giving Melissa sole legal custody of S.M.S.

A hearing was held in April 2016. At the time, the twin daughters were eighteen years old and were expected to graduate from high school later in the spring. In its written ruling, the court found there had not been a material and substantial change in circumstances to justify a transition from physical care with Melissa to joint physical care. The court noted that Melissa and Patrick were still unable to communicate. Additionally:

> The twins have had little or no contact with their mother since 2012. Melissa testified to messages left on their cell phone and text messages which go unanswered. Patrick and the twins make these same allegations regarding S.M.S., implying Melissa is prohibiting contact. The court's conversation with S.M.S. revealed the exact opposite. S.M.S. is aware of the messages, is encouraged to return messages by Patrick, and does so as time allows. Since 2014, the court heard that Patrick and Melissa had one conversation that dealt with when the twins were younger. They have had no substantive conversations as joint custodians. The court is convinced Patrick has chosen a path that minimizes or isolates Melissa's involvement with the twins. In their testimony, Patrick and the twins refer to "we" as if they are all of the same opinion and mindset. . . . This court heard and decided the 2014 modified decree, and seldom is the court able to see how those changes have impacted the minor child. The court is absolutely convinced the right decision was made in 2014. S.M.S. was an isolated child with no friends and no outside activities. Her most prized possession was her dog. In her mother's care, she has

thrived. S.M.S. has friends that she visits and who visit her home, she is in extracurricular activities, has been student of the month, and is on student council. Much of the testimony was how the change of physical care has impacted the twins' relationship with their younger sister; however, the twins are graduating and will be attending college somewhere, and the opportunity for interaction with their sister will be lessened because of time requirements and/or distance, depending where they attend. . . .

. . . .

The court finds Patrick is still angry at Melissa for the divorce. Patrick admitted to calling her names in front of the twins when Melissa is late at pick-up or drop-off. The twins no longer call Melissa "mom" and refer to her by her first name when talking to or about her, which is not often. Patrick comes across as selfish and resentful and determined to punish Melissa for their divorce and for Melissa moving on with her life. This anger and attitude has permeated into the relationship, or lack thereof, between the twins and Melissa.

The court then modified the previous order of joint legal custody, granting Melissa's request to be given sole legal custody of S.M.S. Patrick continued to receive parenting time with S.M.S. on alternating weekends, and he was ordered to pay $4000 of Melissa's attorney fees.

Patrick appeals.[2]

**II. Standard of Review.**

We review the district court's ruling on a petition to modify de novo. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). Although making our own findings of fact, we give weight to the district court's findings regarding the credibility of witnesses. *Id.* The best interests of the child is the "controlling consideration." *Id.*

---

[2] Melissa did not file an appellate brief in these proceedings.

## III. Discussion.

### A. Physical Care.

Patrick filed the present petition for modification, asking the court to order the parties to share physical care of S.M.S. He maintains the court should have granted his request because he proved a substantial change sufficient to warrant modification had taken place and joint physical care is in the S.M.S.'s best interests.

Here, even if we agreed with Patrick's contention that a change warranting modification had taken place, there is nothing in the record that suggests joint physical care is workable for this family. *See In re Marriage of Brainard*, 523 N.W.2d 611, 615 (Iowa Ct. App. 1994) ("Hostility between parents and their inability to effectively communication, however, may preclude an award of joint custody."). Melissa and Patrick have apparently had only one "good" or productive conversation since the first modification was entered in 2014. The parties see each other only at the four-times-monthly exchange of S.M.S. for visits, and those meetings are not without their issues. Patrick admitted to calling Melissa inappropriate names in front of the twins when she was late, and Melissa testified S.M.S. has told her Patrick is purposely late in returning S.M.S. on Sundays. In his brief, Patrick admits that the parties have serious issues communicating with one another—although he places the blame squarely on Melissa's shoulders. As the district court stated, "A joint physical care arrangement [would] only exacerbate the level of conflict between the parties, as evidenced by that of the last few years."

Moreover, we agree with the district court that it is in S.M.S.'s best interests to remain in Melissa's physical care. While S.M.S. certainly expressed to the court that she misses her father, sisters, and dog and wishes she could spend more time with them, she also testified, "If I had—like, if I had another visitation on the weekdays, it would be nice because I would see them more, but that would also be kind of hard because I have homework and stuff to do." S.M.S. spoke positively about all of the activities she has become involved in since being placed in Melissa's care, and, as the district court noted, S.M.S. has thrived since the first modification.

We decline to disturb the district court's ruling regarding physical care of S.M.S.

**B. Legal Custody.**

Patrick maintains the district court should not have granted Melissa's counterclaim to modify legal custody of S.M.S.

"The legislature and judiciary of this state have adopted a strong policy in favor of joint custody from which courts should deviate only under the most compelling circumstances." *In re Marriage of Winnike*, 497 N.W.2d 170, 173 (Iowa Ct. App. 1992). Here, the parents' inability to communicate and Patrick's unwillingness to foster a relationship between his daughters and their mother make a change to sole legal custody appropriate. *See In re Marriage of Bolin*, 336 N.W.2d 441, 446 (Iowa 1983) ("When one parent's obduracy makes joint custody unworkable, the trial court in a modification proceeding may find the child's best interests require sole custody in the other parent."); *see also Winnike*, 497 N.W.2d at 174 ("In determining custody we can give great weight to a

parent's attempt to alienate a child from her other parent if evidence establishes the actions will adversely affect a minor child."). While Patrick maintains it is Melissa who is isolating S.M.S. from him and her sisters, we note that S.M.S. testified that she often does not carry her cel lphone, she only checks it a few times a week, she returns calls and texts "when she has time," and Melissa does tell her to call her father and sisters. Moreover, while the twins testified at length about wanting to spend more time with S.M.S., they were supposed to be spending alternating weekends with S.M.S. at Melissa's house since the 2012 decree, and they refused to follow—and Patrick never made them comply with—the court-ordered visitation schedule. The twins no longer speak to, or about, their mother, and they referred to her as "Melissa" when testifying. Patrick maintains the daughters have made up their own minds about not wanting to pursue a relationship with their mother, but we note—as the district court did—that Patrick tended to answer the questions asked of him with answers regarding what "we"—Patrick and the twins—thought or did, as if they were all of the same opinion or mindset.

We agree with the district court that "the circumstances of this case are sufficiently compelling to justify setting aside joint legal custody in favor of a sole custody arrangement," and we affirm the district court's modification. See *Winnike*, 497 N.W.2d at 173; *see also In re Marriage of Gensley*, 777 N.W.2d 705, 715 (Iowa Ct. App. 2009) (finding joint legal custody was not appropriate where the former couple's "communication problems are so protracted that they exceed 'the usual acrimony that accompanies a divorce.'" (citation omitted)).

**C. Attorney Fees.**

Patrick maintains the district court abused its discretion in awarding Melissa $4000 in attorney fees. He asks that we reverse, or in the alternative reduce the award. Iowa Code section 598.36 (2015) governs the award of attorney fees in a modification proceeding. It allows the court "to award attorney fees to the prevailing party in an amount deemed reasonable by the court." Iowa Code § 598.36. The district court has considerable discretion in determining whether it should award such fees. *In re Marriage of Krone*, 530 N.W.2d 468, 472 (Iowa Ct. App. 1995). We cannot say the district court abused its discretion in ordering Patrick to pay most of Melissa's attorney fees. In doing so, we note that Melissa was the successful party and Patrick filed the petition to modify less than two months after procedendo issued on the previous modification.

For all the reasons stated above, we affirm the district court's modification.

**AFFIRMED.**