# IN THE COURT OF APPEALS OF IOWA

No. 20-0189
Filed October 7, 2020

IN RE THE MARRIAGE OF ASHLEY KAY SEEHASE
AND CHRISTOPHER MICHAEL SEEHASE

Upon the Petition of
ASHLEY KAY SEEHASE,
        Petitioner-Appellee,

And Concerning
CHRISTOPHER MICHAEL SEEHASE,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Chickasaw County, Richard D.

Stochl, Judge.


        Christopher Michael Seehase appeals the child custody and property

distribution provisions of the decree dissolving his marriage to Ashley Kay

Seehase. **AFFIRMED.**



        Elizabeth M. Wayne of Papenheim Law Office, Parkersburg, for appellant.

        Teresa Rastede of Klatt, Augustine, Treinen & Rastede, Waterloo, for

appellee.



        Considered by Bower, C.J., and May and Ahlers, JJ.

**BOWER, Chief Judge.**

Christopher Michael Seehase appeals the child custody and property distribution provisions of the decree dissolving his marriage to Ashley Kay Seehase. We affirm.

Ashley and Christopher were married on August 12, 2006. Ashley was nineteen years old at that time and Christopher twenty-four. Their marriage was dissolved on December 4, 2019. At that time, their two children, J.S. and L.S., were ages three and six. Prior to the temporary custody order, Ashley was the primary caregiver. At the time of the dissolution trial, both parents lived in close proximity, were working full time, had homes suitable for their children, were capable parents, and had the support of their extended families. They both testified counseling would help them co-parent more effectively.

In relation to Ashley's joint physical care request, the district court wrote:

> The parties have not communicated effectively during the pendency of this action. They have each acted out of anger and been vindictive as a result of the "intervention" and resulting no-contact order. This court believes with some counseling and with the dismissal of the no-contact order, that inability can be [remedied].
> It cannot be questioned that cooperation and communication between the parents is essential in joint custodial arrangements. However, our legislature was aware that in a divorce the parties are generally not getting along well and a custody contest magnifies the adversarial nature of the dissolution proceeding. To be significant enough to justify a denial of joint custody, a lack of ability to communicate must be something more than the usual acrimony that accompanies a divorce. Tension between the parents is not alone sufficient to demonstrate joint physical placement will not work.
> . . . .
> The parties are awarded joint legal custody of the minor children. The issue of physical placement is far more complicated. Christopher has enjoyed primary placement since December of 2018. L.S. did not [th]rive emotionally or academically in his care alone. However, both children are bonded to both parents and each ha[s] demonstrated a current ability to provide for their needs. While

communication has been very poor, the court believe[s] the children will benefit most by being in the equal care of both parents. They live in the same school district and each ha[s] solid family support. Ashley has repaired her relationship with her family and Christopher remains close with his. The court now believes the parties are capable of successfully co-parenting their children. They are awarded shared physical custody with the children being exchanged each week on Fridays after school or at 5:00 p.m. when school is not in session.

The court divided the parties' assets and liabilities and ordered Christopher to make an equalization payment to Ashley in the amount of $2800. Christopher appeals.

Because marriage dissolution proceedings are equitable proceedings, our review is de novo. *See* Iowa Code § 598.3 (2018); *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016).

> [W]e examine the entire record and adjudicate anew the issue of the property distribution. We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us. We will disturb the district court's ruling "only when there has been a failure to do equity."

*In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013) (citations omitted).

> "Joint physical care" means an award of physical care of a minor child to both joint legal custodial parents under which both parents have rights and responsibilities toward the child including but not limited to shared parenting time with the child, maintaining homes for the child, providing routine care for the child and under which neither parent has physical care rights superior to those of the other parent.

Iowa Code § 598.1(4).

Pursuant to Iowa Code section 598.41(1)(a), joint custody may be ordered and the court's custody determination is to "assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage" and "will encourage parents to

share the rights and responsibilities of raising the child." The court must consider granting joint custody upon a parent's request, and "[i]f the court does not grant joint custody under this subsection, the court shall cite clear and convincing evidence . . . that joint custody is unreasonable and not in the best interest of the child." *Id.* § 598.41(2), (3).

Christopher argues shared care is not in the children's best interests. He repeats his complaints about communication the parties have experienced during the parties' separation.[1] We have already noted the trial court's acknowledgement of that issue. Yet, we agree with the district court the parties' conflict is not so unusual as to preclude shared care. *See In re Marriage of Bolin*, 336 N.W.2d 441, 446 (Iowa 1983) ("Although cooperation and communication are essential in joint custody, tension between the parents is not alone sufficient to demonstrate it will not work."). Ashley and Christopher have both shown they are able to communicate about the children's care and both agreed their communication could be aided with counseling. We encourage them to attempt to let go of their past grievances and follow through with counseling so they can positively support their children.

Christopher next challenges the property division ordered by the court. "In dissolution-of-marriage cases, marital property is to be divided equitably, considering the factors outlined in Iowa Code section 598.21[(5)]." *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007). "An equitable distribution of marital

---

[1] The parties' descriptions of their interactions—not surprisingly—is very different. The trial court's findings of facts tended to support Christopher's version of events. Our reading of the transcript might lead to different findings. However, it is clear both parties love and are capable of providing care to the children.

property, based upon the factors in 598.21(5), does not require an equal division of assets." *In re Marriage of Kimbro*, 826 N.W.2d 696, 703 (Iowa 2013). The value of the assets is to "be determined as of the date of trial." *In re Marriage of Driscoll*, 563 N.W.2d 640, 642 (Iowa Ct. App. 1997).

Christopher objects to the amount of the equalization payment, the valuation and division of one of his retirement accounts,[2] and the court's equal allocation of the debt remaining from a vehicle the court ordered sold. The valuations made by the court were within the range of evidence, and we do not disturb them. *See Hansen*, 733 N.W.2d at 703. Christopher gives no compelling reason to deviate from the general rule that valuations are to be made as of the date of trial. And while one might quibble with a particular finding as to the value of one asset or another, overall we find no failure to do equity in the court's property distribution, and we affirm. *See McDermott*, 827 N.W.2d at 676.

Both parties seek an award of appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *Id.* at 687 (citation omitted). "In determining whether to award appellate attorney fees, we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *Id.* (citation omitted). In light of Christopher's lack of success on the merits of his appeal and greater ability to pay, he shall pay $2000 toward Ashley's appellate attorney fees. Costs are assessed to Christopher.

**AFFIRMED.**

---

[2] Christopher did not initially disclose this account but acknowledged its existence and value at trial.