# IN THE COURT OF APPEALS OF IOWA

No. 21-0801
Filed April 13, 2022

IN RE THE MARRIAGE OF DAVID CHARLES BLACK
AND ALANNA MARIE BLACK

Upon the Petition of
DAVID CHARLES BLACK,
    Petitioner-Appellee,

And Concerning
ALANNA MARIE BLACK,
    Respondent-Appellant.
_____


Appeal from the Iowa District Court for Hamilton County, Kurt L. Wilke, Judge.


Alanna Black appeals the physical-care provisions of the decree dissolving her marriage to David Black. **AFFIRMED.**


Mark R. Hinshaw of The Law Offices of Mark R. Hinshaw, West Des Moines, for appellant.

Michael L. Lewis of Lewis Law Firm. P.C., Cambridge, for appellee.


Considered by Vaitheswaran, P.J., Greer, J., and Mullins, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**MULLINS, Senior Judge.**

Alanna Black appeals the decree dissolving her marriage to David Black, challenging the district court's award of physical care of the parties' two children to David. Alternatively, she requests expanded visitation.

## I.     Background

The parties met in 2009. Alanna, and her two children from a prior relationship, moved in with David a few months later. The children in interest were born in 2010 and 2012. The parties agreed Alanna would stay home with the children until they both reached school age. Early on, David's employment was out of town, and he worked a lot of overtime. In or about 2018, however, David switched jobs and was able to be home more often. Since then, he has been more involved with overseeing the children's day-to-day care.

Even before the parties married in 2014, their relationship had substantial problems, including domestic altercations. As the district court concluded, "To say that these parties have had a volatile relationship would be a gross understatement." Both parties essentially agreed with this assessment in their testimony. Following one incident in 2013, both parties were arrested for domestic abuse assault. For her part in this incident, Alanna threatened David with both a knife and firearm. As a result, the children were removed from the parents' care for about six months. At one point, both parties quit drinking alcohol. But, according to David, Alanna started "closet drinking" thereafter. Alanna essentially agreed this was true. It appears Alanna's alcohol use and mental-health issues have fueled the marital strife and other issues in the family home since. Over the

years, Alanna has lodged several false reports with law enforcement against David.

Everything came to a head in March 2019, when Alanna assaulted the older child following an argument with David during which she threatened to kill him. Alanna called the police when David tried to leave with the children, and she reported he was intoxicated. Police arrived and determined David had not been drinking. Alanna was arrested. David petitioned for relief from domestic abuse shortly thereafter, and a temporary protective order was entered that effectively required Alanna to move out of the family home, after which she was essentially homeless. The Iowa Department of Human Services also became involved and ultimately recommended that Alanna participate in services, which she declined. A final protective order was entered in April, which found Alanna engaged in domestic abuse against David and awarded David temporary physical care of the children. The children have been in David's physical care ever since, subject to Alanna's right to visitation.

Shortly after the entry of the final protective order, David petitioned for dissolution of the parties' marriage, requesting sole legal custody and physical care of the children. In her answer, Alanna requested joint legal custody and primary physical care. Following a temporary-matters hearing, the court awarded the parties temporary joint legal custody with physical care to David and visitation to Alanna. Until Alanna secured appropriate housing, she would be entitled to visitation every other Friday, Saturday, and Sunday from 8:00 a.m. until 6:00 p.m. and every Wednesday from 8:00 a.m. until 6:00 p.m. After she secured appropriate housing, her visitation would encompass every other weekend from

Friday evening to Monday morning and every Wednesday morning through Thursday morning.

Effective communication between the parties was basically nonexistent through the time of trial in April 2021. By that point, David was thirty-five years old. He continued to live in the family home, which he purchased prior to his relationship with Alanna. He is employed in the heating-and-cooling field and works forty hours per week, earning $31.15 per hour. Alanna was forty-seven years old at the time of trial. She resides in a two-bedroom apartment and works forty hours per week as a cashier at a truck stop, a job she began in November 2019, earning $13.80 per hour. She testified she continued consuming alcohol regularly for a number of months following the parties' separation, but she quit in August 2019. Alanna agreed the children have been doing well in David's physical care for the last two years. However, she felt David was trying to alienate her from the children's lives.

At trial, David pursued an award of physical care of the children. Alanna also requested physical care but testified she would be satisfied if the children were placed in the parties' joint physical care. In the event the children were placed in David's physical care, she requested that her visitation be expanded. In its decree, the court found the children were thriving in David's care and joint physical care would not work due to the parties' volatile relationship. As such, the court awarded David physical care. During the school year, Alanna was awarded visitation every other weekend from Friday evening to Sunday evening and every Wednesday from after school until 8:00 p.m. During the summer, the parties would share care on an alternating weekly schedule.

Alanna appeals.

**II.     Standard of Review**

Appellate review of dissolution proceedings is de novo.  Iowa R. App. P. 6.907; *In re Marriage of Pazhoor*, ___ N.W.2d ___, ___, 2022 WL 815293, at *4 (Iowa 2022).  While we give weight to the factual findings of the district court, especially when considering the credibility of witnesses, we are not bound by them. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007).  When considering child custody, our principal consideration is the best interests of the children.  Iowa R. App. P. 6.904(3)(o); *see In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

**III.    Analysis**

On appeal, Alanna challenges the district court's physical care decision. She argues the children should have been placed in her physical care. Alternatively, she requests the children be placed in the parties' joint physical care or, at the very least, her visitation be expanded.

**A.     Physical Care**

On her claims concerning physical care, Alanna argues "the district court failed to assign proper weight to her role as the primary caregiver to the parties' children over the course of the marriage" and "the trial court failed to appreciate David's failure to support her relationship with the parties' children."  Where, as here, "joint legal custody is awarded to both parents, the court may award joint physical care to both joint custodial parents upon the request of either parent." Iowa Code § 598.41(5)(a) (2019).  Physical care determinations are based on the best interests of *children*, not "upon perceived fairness to the *spouses*."  *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).  "The objective of a

physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.*

Because Alanna appeared to prefer the imposition of a joint-care arrangement at trial, we begin with the court's rejection of that request. We consider the following nonexclusive factors in determining whether a joint-physical-care arrangement is in the best interests of children:

> (1) "approximation"—what has been the historical care giving arrangement for the child[ren] between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

*In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) (quoting *Hansen*, 733 N.W.2d at 697–99).

We begin with approximation. It is true that Alanna was a stay-at-home parent early on, while David worked long hours to provide for the family financially. However, the dynamic changed in or about 2018, when David was able to be around more often. David took on more tasks relating to the children, and Alanna withdrew. Then, in 2019, Alanna's alcohol abuse, mental-health issues, and resulting erratic behavior (including assaulting one of the children), resulted in the children being placed in David's physical care. Approximation is considered when evaluating joint care because stability and continuity of caregiving are presumed to be in children's best interests. *See Hansen*, 733 N.W.2d at 696. When parents generally share care, that dynamic should generally continue as having been workable in the past. But joint care has never really been the arrangement between the parties. Instead, it has pretty much been one or the other. The status

quo and benchmark for continuity of caregiving at this point is David being the caregiver. We are unable to conclude this factor weighs in favor of a shared-care arrangement.

We turn to the parties' ability to communicate and show mutual respect and the degree of conflict between them. *Id.* at 698. These factors unquestionably weigh against awarding the parties joint care. This is because "[j]oint physical care requires substantial and regular interaction between divorced parents on a myriad of issues." *Id.* And the possibility that these parties may be able to settle their differences is low. *See id.* At the end of the day, a rocky divorce "presents a significant risk factor that must be considered in determining whether joint physical care is in the best interest of the children." *Id.*

There was little evidence presented concerning the final factor, "the degree to which the parents are in general agreement about their approach to daily matters." *Id.* at 699. What we do know is that the parties disagree about certain things that go on while the other has the children. There have been issues with the children completing their homework and attending extracurricular activities while with Alanna. David also has concerns that Alanna smokes in her home and subjects the children to second-hand smoke. Alanna clearly despises any involvement of David's girlfriend with the children. She has also contacted law enforcement to do welfare checks on the children during David's parenting time. Lastly, she alleges David exposes the children to sexually inappropriate conduct and material, an allegation we find lacking in credibility.

On our review, we agree with the district court that a joint-care arrangement is not in the best interests of the children, and we accordingly affirm the district

court's denial of Alanna's request for joint physical care.  *See* Iowa Code § 598.41(5)(a).

We next consider Alanna's claim that the court erred in awarding David physical care instead of her.  Alanna argues she "can best minister to the immediate and long-term best interests of the children" and "David does not support the children's relationship with" her.  "The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3)."  *In re Marriage of Courtade*, 560 N.W.2d 36, 37 (Iowa Ct. App. 1996).  "Although Iowa Code section 598.41(3) does not directly apply to *physical care* decisions, . . . the factors listed here as well as other facts and circumstances are relevant in determining" physical care.  *Hansen*, 733 N.W.2d at 696.  The relevant factors in this case are:

> (a) Whether each parent would be a suitable custodian for the child[ren].
> (b) Whether the psychological and emotional needs and development of the child[ren] will suffer due to lack of active contact with and attention from both parents.
> (c) Whether the parents can communicate with each other regarding the child[ren]'s needs.
> (d) Whether both parents have actively cared for the child[ren] before and since the separation.
> (e) Whether each parent can support the other parent's relationship with the child[ren].
> . . . .
> (g) Whether one or both of the parents agree or are opposed to joint custody.
> (h) The geographic proximity of the parents.
> . . . .
> (j) Whether a history of domestic abuse, as defined in section 236.2, exists.

*See* Iowa Code § 598.41(3)(a)–(e), (g), (j).  We also consider the characteristics of the children and parents, the children's needs and the parents' capacity and interests in meeting the same, the relationships between the parents and children,

the effect of continuing or disrupting an existing physical-care arrangement, the nature of each proposed environment, and any other relevant matter disclosed by the evidence. *See In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974).

Regarding the suitability of each parent, *see* Iowa Code § 598.41(3)(a), we acknowledge that Alanna served as the primary caretaker for the first several years of the children's lives. However, the record shows Alanna was afflicted with mental-health and alcohol-abuse issues during that period, and such wreaked havoc on the family environment. We also acknowledge David is not entirely innocent when it comes to the issue of alcohol use and its results on the home front. But the evidence shows Alanna's abuse caused more harm than David's. It is true that Alanna has cleaned up her act since the parties separated. But so has David, and there have been no issues concerning David's suitability as a custodian while the children have been in his temporary physical care. We find this factor weighs in favor of David, although only minimally.

Turning to the effect on the children's needs and development resulting from lack of contact or attention from both parents, *see id.* § 598.41(3)(b), no evidence was presented that the children are suffering from reduced contact with Alanna or would suffer from reduced contact with David. As a result, this factor does not weigh in favor of or against either party. There is no question that the parties are unable to communicate about the children's needs. *See id.* § 598.41(3)(c). While Alanna faulted David for this, we find it is a result of the actions of both parties. Both parents have provided active care for the children at different stages. *See id.* § 598.41(3)(d). Alanna was the primary caregiver early on while David worked and provided financially. After David switched jobs, he took on a more active role,

which resulted in Alanna withdrawing somewhat from some duties. David's role expanded further after Alanna assaulted the older child and engaged in domestic abuse against David, which resulted in Alanna being legally barred from the family home and the children being placed in David's temporary care. Based on the importance of stability and continuity of caregiving, we find this factor weighs in favor of David.

A significant factor in this case is "[w]hether each parent can support the other parent's relationship with the child[ren]." *See id.* § 598.41(3)(e). It is true that David has taken actions that would cause one to assume he is trying to limit Alanna's involvement in the children's lives. But that has not been a one-way street and, given the disdain between the parties, we have no reason to assume Alanna would not have engaged in the same type of behavior had she had the upper hand with temporary physical care. She attempted to stir the pot on several occasions during the proceedings by making allegations of sexual impropriety and sending law enforcement on welfare checks of the children during David's parenting time. We are unable to find this factor meaningfully weighs in favor of either parent. But we expressly advise the parties this does not need to be a race to the bottom. Downplaying one another's status as the children's parent is not in the children's best interests and may result in long-lasting effects the parents do not anticipate now and never intended. We admonish each parent to foster the other's relationship with the children for the sake of the children's best interests, which should be their principal consideration over all else.

Both parents sought an award of physical care, but Alanna agreed she would settle for joint care, and her trial strategy was geared more toward that goal.

*See id.* § 598.41(3)(g). However, we have already determined such an arrangement would be unworkable. The parents live geographically close to one another, but this factor has a heavier bearing on questions of joint physical care and visitation than it does on which parent should be awarded physical care. *See In re Marriage of Bolin*, 336 N.W.2d 441, 446 (Iowa 1983). There is unquestionably a history of domestic abuse. *See* Iowa Code § 598.41(3)(g). While neither party is innocent on this front, the legal history shows Alanna is the primary perpetrator. She even assaulted one of the children on one occasion. We find this factor weighs in favor of David as the physical care parent.

At the end of the day, "[t]he objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695; *accord Courtade*, 560 N.W.2d at 38. "Determining what custodial arrangement will best serve the long-range interest of a child frequently becomes a matter of choosing the least detrimental available alternative for safeguarding the child's growth and development." *Winter*, 223 N.W.2d at 167. On our review, we agree with the district court that awarding David physical care better serves these goals. We therefore affirm the award of physical care to David.

### B. Visitation

Alanna argues her visitation should be expanded. Her only meaningful complaint is that the decree provided her with less parenting time than she was allowed under the temporary matters order. However, she ignores the fact that the court significantly increased her visitation during the summer months to every other week.

"Liberal visitation rights are in the best interests of the children," and children "should be assured the opportunity for the maximum continuing physical and emotional contact with *both* parents." *In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993); *accord* Iowa Code § 598.41(1)(a). "Although liberal visitation is the benchmark, our governing consideration in defining visitation rights is the best interests of the children, not those of the parent seeking visitation." *In re Marriage of Brainard*, 523 N.W.2d 611, 615 (Iowa Ct. App. 1994).

Alanna essentially requests that she be awarded two overnight visits during the week during the school year. Due to the issues with the children completing their homework and making it to extracurricular activities while in Alanna's care during the week, we conclude the current visitation schedule is in the best interests of the children. We therefore affirm the visitation schedule imposed by the district court.

## IV. Conclusion

Finding no cause for modifying the district court's decree based on the issues raised on appeal, we affirm.

**AFFIRMED.**